844 So.2d 893 (2003)
Joseph HAMILTON, Jr. and Mable Young Hamilton
v.
ANCO INSULATION, INC., the McCarty Corporation, Pittsburgh Corning Corporation, Rapid American Corporation, and C F Industries, Inc.
No. 2002 CA 0221.
Court of Appeal of Louisiana, First Circuit.
February 14, 2003.
*894 J. Burton LeBlanc, Baton Rouge, Counsel for Appellee Joseph Hamilton, Jr.
Susan B. Kohn, New Orleans, Counsel for Appellee McCarty Corporation.
Daniel J. Balhoff, Baton Rouge, Counsel for Appellee C.F. Industries.
Gordon P. Wilson, New Orleans, Counsel for Appellee Travelers Casualty and Surety Co.
Michael R. Sistrunk, Metairie, Counsel for Appellee W.R. Grace & Co.
William F. Grace, Earl F. Sundmaker, III, New Orleans, Counsel for Appellee Marsh & McLennan Co., Inc.
Glenn L.M. Swetman, New Orleans, Counsel for Appellee Garlock, Inc.
John J. Hainkel, III, New Orleans, Counsel for Appellee Owens Corning.
James F. Holmes, New Orleans, Counsel for Appellee M.W. Kellogg Constructors, Inc.
Robert A. Redwine, New Orleans, Counsel for Appellant Allianz Underwriters, Inc.
Before: FOIL, McCLENDON, and KLINE,[1] JJ.
WILLIAM F. KLINE, JR., Judge Pro Tem.
This is an appeal of a summary judgment rendered in favor of an insured regarding the applicability of provisions in an insurance contract. For the following reasons, we reverse.

FACTS AND PROCEDURAL HISTORY
Joseph Hamilton, Jr. was employed by C F Industries, Inc. (CFI) at its Donaldsonville, Louisiana facility as a warehouse operator from 1968 to 1983. In June of 1999, Mr. Hamilton was diagnosed with mesothelioma, a known asbestos-related disease. So severe was Mr. Hamilton's illness that his doctor surmised that he would probably not survive beyond June of 2000. On January 19, 2000, Mr. Hamilton filed suit against several defendants including CFI. The petition sought damages for Mr. Hamilton's "occupational exposure to asbestos" and his resulting "contraction of mesothelioma" and asserted a claim on behalf of Mrs. Hamilton for loss of consortium. The petition alleged that in connection with his work at CFI, Mr. Hamilton "was exposed to and inhaled or otherwise ingested significant quantities of asbestos...."
From July 1, 1983 until July 1, 1984, primary insurance coverage for CFI was provided by The Hartford in the form of a Standard Workmen's Compensation and Employer's Liability Policy. The Workmen's Compensation portion of the policy only applied if an employee was covered under state workers' compensation law. In the present case, Mr. Hamilton's claim was not covered under Louisiana's workers' compensation law, thus precluding the applicability of that portion of the policy.[2] *895 The Employer's Liability portion of the policy covered damages caused by "bodily injury by accident or disease" sustained by an "employee of the insured arising out of and in the course of his employment by the insured" that were not covered under state workers' compensation law. The limit of liability under the Employer's Liability portion of the policy was $100,000 per occurrence. When CFI determined that its liability exposure in this case might exceed Hartford's $100,000 Employer's Liability policy limit, it sent notice of the suit to Allianz Underwriters, Inc. (Allianz), its excess insurer, on September 1, 2000. Allianz had issued an Umbrella Liability Policy to CFI for the same period to provide coverage in excess of The Hartford's Workmen's Compensation and Employer's Liability Policy.
On October 13, 2000, CFI filed a First Supplemental Third Party Demand against Allianz seeking (1) a declaratory judgment that the Allianz policy provided coverage of the Hamiltons' claims against CFI, and (2) damages allegedly incurred by CFI as a result of Allianz's breach of contract. In a letter to CFI dated October 19, 2000, Allianz declined to indemnify CFI for any loss arising from the Hamiltons' claims. Allianz based its denial on the following contract provisions.
The Allianz policy provided:
CONDITIONS
D. SPECIAL CONDITIONS APPLICABALE TO OCCUPATIONAL DISEASE. As regards personal injury by occupational disease sustained by any employee of the Insured, this policy is subject to the same warranties, terms and conditions (except as regards the premium, the amount and limits of liability and the renewal agreement (if any), as are contained in or as may be added to the Underlying Insurance prior to the happening of an occurrence for which claim is made hereunder. [sic]
The "Underlying Insurance," provided by the Hartford policy, set forth, in pertinent part, as follows:
I. Coverage BEmployers' Liability: To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury by accident or disease, including death at any time resulting therefrom...
...
III. Definitions:
...
(c) Bodily Injury by Accident; Bodily Injury by Disease. The contraction of disease is not an accident within the meaning of the word "accident" in the term "bodily injury by accident" and only such disease as results directly from a bodily injury by accident is included within the term "bodily injury by accident." The term "bodily injury by disease" includes only such disease as is not included within the term "bodily injury by accident."
IV. Application of Policy: This policy applies only to injury (1) by accident occurring during the policy period, or (2) by disease caused or aggravated by exposure of which the last day of the last exposure, in the employment of the insured, *896 to conditions causing the disease occurs during the policy period.
...
Exclusions
This policy does not apply:
...
(e) under coverage B, to bodily injury by disease unless prior to thirty-six months after the end of the policy period written claim is made or suit is brought against the insured for damages because of such injury or death resulting therefrom;
Conditions
...
5. Notice of Injury: When an injury occurs written notice shall be given by or on behalf of the insured to the company or any of its authorized agents as soon as practicable. Such notice shall contain particulars sufficient to identify the insured and also reasonably obtainable information respecting the time, place and circumstances of the injury, the names and addresses of the injured and of available witnesses.
6. Notice of Claim or Suit: If claim is made or suit or other proceeding is brought against the insured, the insured shall immediately forward to the company every demand, notice, summons or other process received by him or his representative.
Allianz averred that although the Hamiltons' suit had been filed in January of 2000, Allianz was not given notice of the suit until September of 2000. Consequently, Allianz argued that "policy Condition # 6 (prompt notice) ha[d] been breached, thus voiding any coverage which might otherwise have been available under the policy(ies)." Allianz further contended that Mr. Hamilton's January 2000 claim for bodily injury by disease was not made within thirty-six months of the end of the policy period, and as the Allianz policy was subject to Hartford's Exclusion (e), Allianz would decline to indemnify CFI for any liability arising from Mr. Hamilton's claim.
On November 22, 2000, the Hamiltons filed a Second Supplemental and Amended Petition to add Allianz as a defendant pursuant to La. R.S. 22:655, Louisiana's Direct Action Statute. Subsequently, the Hamiltons settled their claim with CFI on November 30, 2000. The settlement agreement, entitled "Full and Final Release, Indemnity Agreement and Contractual Assignment of Rights," provided that in return for a specified sum, the Hamiltons agreed to "completely release, acquit and forever discharge [CFI], their predecessors, successors, parents, affiliates, subsidiaries, divisions ... from any and all rights, claims, demands, or actions of any kind or nature whatsoever" which the Hamiltons "now have, or may have in the future, in whole or in part arising out of, related to, resulting from, or contributed to by [Mr. Hamilton's] alleged exposure to asbestos or asbestos-containing materials...." It further provided that "[i]n partial consideration" of the settlement payment, the Hamiltons agreed to assign all their rights against Allianz to CFI.
On May 8, 2001, CFI filed a motion for summary judgment against Allianz on the two issues raised by Allianz to deny coverage: the thirty-six month exclusion and the late notice. CFI argued that the thirty-six month exclusion was an impossible resolutory condition and therefore should be given no effect. Furthermore, CFI urged that Allianz must prove that it was prejudiced by any alleged untimely notice of suit.
On May 18, 2001, Allianz filed a cross-motion for summary judgment seeking dismissal of the Hamiltons' and CFI's claims. On July 9, 2001, Allianz filed an opposition *897 to CFI's motion. Subsequently, CFI opposed Allianz's motion on July 11, 2001. A hearing on the motions was held on July 16, 2001. In a judgment rendered on July 31, 2001, the trial court granted CFI's motion for summary judgment and denied the motion of Allianz.
Regarding the thirty-six month exclusion, the trial court noted the following in its reasons for judgment:
This court finds that such a provision is an impossible resolutory condition under the facts of this case and that the provision should be given no effect. In Mr. Hamilton's case, there was no way he could have known or should have known that he had mesothelioma until 1999. In fact, evidence in the record shows that Mr. Hamilton had a chest xray in 1982, one year prior to leaving CFI's employ and the x-ray showed no signs of the disease. Subsequent x-rays in the years following also revealed no signs of the mesothelioma. Because of the latency period associated with the disease, it is not surprising that Mr. Hamilton did not discover that he was afflicted with it until almost 20 years after he was exposed to asbestos in his workplace.
On the issue of untimely notice of suit, the trial court found that:
Notwithstanding the fact that Allianz may not have received the notice initially, this Court finds that, under Louisiana law, Allianz must show that it was prejudiced by the alleged untimely notice in order to successfully deny coverage. Miller v. Marcantel, 221 So.2d 557 (La. App. 3d. Cir.1969). Under the facts of this case, this Court does not find that Allianz was prejudiced in any way by the timing of the notice.
On August 13, 2001, the judgment was amended to include a designation by the trial court that it was a final judgment. Subsequently, Allianz sought a devolutive appeal and a stay of the trial court proceedings as between Allianz and CFI, which was granted on September 12, 2001. In this posture, the matter comes before us. On appeal, Allianz urges the following assignments of error:
(1) The insurance policy in question contained an exclusion of coverage of claims for occupational disease. The sole exception to that exclusion was that, if such a claim were made within thirty-six (36) months following the expiration of the policy, then the exclusion would not be enforced. The trial court erred in treating the 36-month exception as though the exception were itself an exclusion, rather than an extension of coverage.
(2) The trial court erred in refusing to find that the result of an impossible suspensive condition to coverage under an insurance policy is no coverage.
(3) The trial court erred in refusing to find that treating an exception to an exclusion as not having been written results in an absolute exclusion, without exception, and thus no coverage under the insurance policy.
(4) The trial court erred in finding that the 36-month provision was an impossible condition as between the parties to the insurance contract.
(5) In ruling on a summary judgment motion, the trial court erred in considering affidavits which were not made upon personal knowledge.
(6) The trial court erred in finding that, since the insured "thought it was providing notice" of a lawsuit to its insurer, the fact that the insurer did not receive notice until some months later, is of no [sic] "no import", [sic] *898 (7) The trial court erred in holding that, under Louisiana law, an insurer must show prejudice from late notice when notice is an express condition of coverage under the policy and when the party seeking coverage is not a third-party claimant, but is the insured as a sophisticated business entity.
(8) The trial court erred in implicitly finding that plaintiff's assignment of his rights against his employer's insurer, as a result of settlement between plaintiff and his employer, resulted in the employer "stepping into the shoes" of plaintiff and his Direct Action rights, so that the party seeking coverage is actually a third-party claimant rather than the insured as a sophisticated business entity.
(9) The trial court erred in finding that Allianz was not prejudiced by the late notice
As an appellate court, we review de novo trial court rulings regarding summary judgments and employ the same criteria as the trial court in conducting that review. Smith v. Our Lady of the Lake Hosp., Inc., 93-2512, p. 26 (La.7/5/94), 639 So.2d 730, 750. That criteria is contained in La. C.C.P. art. 966 which provides, in pertinent part, as follows:
The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.
Finding merit in appellant's fourth assignment of error, we conclude that summary judgment in this case was improperly granted as CFI was not entitled to judgment as a matter of law.

DISCUSSION
An insurance policy is a contract that constitutes the law between the parties. Marcus v. Hanover Insurance Company, Inc., 98-2040, p. 4 (La.6/4/99), 740 So.2d 603, 606, citing Pareti v. Sentry Indemnity Company, 536 So.2d 417, 420 (La. 1988). If the wording of the policy is clear and expresses the intent of the parties, the policy must be enforced as written. Id. Absent a conflict with statutory provisions or public policy[3], insurers are entitled to limit their liability and to impose reasonable conditions upon the obligations they contractually assume. Marcus v. Hanover Insurance Company, 98-2040 at p. 4 (La.6/4/99), 740 So.2d at 606, citing Louisiana Insurance Guaranty Association v. Interstate Fire & Casualty Company, 93-0911, p. 6 (La.1/14/94), 630 So.2d 759, 763.
In brief to this court, Allianz argues that the trial court erred in finding the thirty six month provision was an impossible condition. However, even if the condition were found to be impossible, Allianz contends it is a suspensive condition, which would render the contract null and thus, "the result, as a matter of law, is no coverage." Conversely, in its brief, CFI argues that the thirty-six month exclusion is an "impossible resolutory condition" and consequently only the exclusion "should be regarded as not written."
We begin by noting that a conditional obligation is one dependent on an uncertain *899 event. La. C.C. art. 1767. The event is uncertain in that it may or may not occur. Alain A. Levasseur, Precis in Conventional Obligations: A Civil Code Analysis 9 (1980). Louisiana Civil Code article 1767 provides, in pertinent part:
If the obligation may not be enforced until the uncertain event occurs, the condition is suspensive.
If the obligation may be immediately enforced but will come to an end when the uncertain event occurs, the condition is resolutory.
According to these definitions, it is quite clear that the condition at issue herein (that a claim for "bodily injury by disease" must be made within thirty-six months of the policy's expiration) is suspensive, rather than resolutory, since unless or until the uncertain event of making a claim occurs, the obligation of Allianz to indemnify CFI cannot be enforced. See Levasseur at 9.
This determination is noteworthy. The comments to La. C.C. art. 1769 provide that if an impossible condition is resolutory, "and if the obligation to which the written condition is attached is otherwise valid, [only] the condition is regarded as not written." However, La. C.C. art. 1769 provides that in the case of an impossible suspensive condition, the [entire] obligation is rendered null. Nevertheless, the jurisprudence has not held this rule to be absolute. The Supreme Court in Morse v. J. Ray McDermott & Co., Inc., 344 So.2d 1353, 1358 (La.1976) (quoting Plainol, Civil Law Treatise Volume 2, Section 1269, p. 720) stated that such a condition within a contract annuls the entire agreement only
"to the extent to which the agreement depends on it. The judges are therefore always free to recognize, by interpretation of the will of the parties, that the condition inserted in the contract is only an accessory clause to which the contract was not subject for its existence; in which case, the illegal, immoral, or impossible condition is effaced and the agreement subsists as to the rest."
In the present case, there is a lack of evidence regarding the will of the parties to the contract. Such evidence is unnecessary however because we find that the suspensive condition in question is not an impossible condition.
There is no question that Mr. Hamilton could not have made a claim against CFI for damages within thirty-six months of the end of the policy period. Mr. Hamilton left his employment at CFI in 1983. The applicable policies expired on July 1, 1984 thus requiring claims for occupational diseases to be made by July 1, 1987. However, Mr. Hamilton was not diagnosed with mesothelioma until June of 1999. A chest x-ray taken less than one year prior to his diagnosis showed that his lungs were "clear." Furthermore, Dr. Victor Roggli, Mr. Hamilton's medical expert, testified that the cancer cell that caused the tumor probably did not begin to develop until five or ten years before the 1999 diagnosis, at least some six years after the last date of Mr. Hamilton's employment with CFI. Finally, the totality of the medical evidence supports a finding that mesothelioma has a lengthy latency period. Hence, we agree with the trial court's determination that the thirty-six month exclusion was impossible "under the facts of this case." Nevertheless, we do not find it to be impossible in all cases.
An impossible condition is one contemplating the occurrence of an event which cannot take place. However, the Civil Code is concerned with absolute impossibility. Levasseur at 11. Thus, impossible conditions, as contemplated in La. C.C. art. 1769, are those in which "no one can bring about the events of which they consist." 5 Saul Litvinoff, Louisiana Civil Law Treatise: *900 The Law of Obligations § 5.5 p. 75 (2nd ed.2001).(Emphasis added). In the case sub judice, CFI failed to present any evidence that all occupational disease claims have such lengthy latency periods that it would preclude coverage under the terms of the contract in all cases. Without such evidence, we cannot conclude that the thirty-six month exclusion is an impossible condition.
In sum, while the thirty-six month exclusion at issue herein is a suspensive condition, it is not an impossible suspensive condition. Accordingly, the trial court's grant of summary judgment based on finding that the thirty-six month exclusion was an impossible resolutory condition was improper as a matter of law. Based on our finding on this issue we pretermit entertaining appellant's remaining assignments of error.

CONCLUSION
For the foregoing reasons, the summary judgment rendered by the trial court in favor of CFI is reversed. All costs of this appeal are to be borne by appellee herein, C F Industries, Inc.
REVERSED.
NOTES
[1] Hon. William F. Kline Jr., retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] Because he suffered from mesothelioma allegedly caused by exposure to asbestos while employed by CFI from 1966 to 1983, CFI concludes that Mr. Hamilton's disease had to be evaluated under the workers' compensation law as existed prior to the 1975 amendments. Because mesothelioma was not a listed covered disease, CFI contends Mr. Hamilton's claim was not covered by Louisiana workers' compensation law. The issue of whether or not the pre-1975 workers' compensation law applies in this case has not been contested and is not presently before us.
[3] This court, in an unpublished opinion, found that a thirty-six month exclusion, such as the one in the present case, does not violate public policy when the dispute is between the parties to the contract and the exclusion is clear and unambiguous. Hubbs v. Anco Insulations, Inc., XXXX-XXXX, p. 11 (La.App. 1 Cir. 6/21/02), 826 So.2d 1199 (unpublished opinion).