843 So.2d 577 (2003)
Lundell McKITTRICK and Tammy McKittrick, Plaintiffs-Appellants,
v.
LOUISIANA HEALTH SERVICE AND INDEMNITY COMPANY d/b/a Blue Cross/Blue Shield of Louisiana, Defendant-Appellee.
No. 37,104-CA.
Court of Appeal of Louisiana, Second Circuit.
April 9, 2003.
*578 Rhymes & Lucas By George E. Lucas, Jr., Monroe, for Appellants.
Sharp, Henry, Cerniglia, Colvin, Weaver & Hymel By James H. Colvin, Homer, for Appellee.
Before BROWN, STEWART and KOSTELKA (Pro Tempore), JJ.
STEWART, J.
Lundell and Tammy McKittrick ("the McKittricks") appeal the granting of a motion for summary judgment finding that no coverage existed under the health insurance policy issued to them for their newborn child, Leigha McKittrick ("Leigha"). For the reasons assigned below, we affirm.

FACTS
On April 20, 1998, the McKittricks applied for health insurance for Mrs. McKittrick in contemplation of their efforts to conceive a child. The McKittricks applied for the coverage with Louisiana Health Service and Indemnity Company d/b/a Blue Cross/Blue Shield of Louisiana ("Blue Cross") through an independent contractor, Mark Leon Miletello, who was authorized to sell its coverage. Tammy McKittrick has alleged that during the application process Mr. Miletello assured her that once the child was born it would be automatically covered under the coverage she was selecting. Mr. Miletello refuted the McKittricks version of the events that gave rise to the insurance contract stating that the McKittricks specifically chose the "applicant only" coverage. It is important to note that the "applicant only" coverage calls for lower premiums than the other choices because it does not provide automatic coverage when a child is born. Miletello asserted that it would never have been his practice to make such a statement to someone selecting "applicant only" coverage.
Coverage was issued to Mrs. McKittrick effective May 15, 1998. Mrs. McKittrick gave birth to Leigha at the Minden Medical Center on March 11, 1999. Unfortunately, Leigha was born with Haline Membrane Disease and persistent fetal circulation. As a result of these conditions she was transferred to the neonatal intensive care unit at Willis-Knighton. On March 28, 1999, Mrs. McKittrick completed a change of status card provided by Blue Cross to add Leigha to her insurance. In responding to the questionnaire regarding Leigha's medical history, Mrs. McKittrick failed to disclose the above listed medical conditions Leigha suffered from at birth. However, Blue Cross started receiving claims for coverage on the minor child at around the same time they received the change of status card applying for coverage. Due to the inconsistency between the medical claims being received and the history provided, Blue Cross conducted an investigation. On May 13, 1999, Blue Cross notified Mrs. McKittrick that they would not be adding coverage for Leigha to the policy as a result of Leigha's medical history.
The McKittricks then filed suit against Blue Cross claiming that coverage had been arbitrarily and capriciously denied despite their completion of the forms within *579 the prescribed time frame required to add coverage without evidence of insurability. Blue Cross filed an answer asserting that the coverage selected by Mrs. McKittrick did not allow for the addition of coverage on a newborn without providing evidence of insurability, and that the omissions made in the change of status card were material to whether underwriting would approve coverage.
On March 25, 2002, Blue Cross filed a motion for summary judgment alleging that no genuine issue of material fact existed which precluded a finding that Leigha McKittrick was not an "insured" under the Blue Cross policy; therefore, the claims for coverage of her medical expenses were properly denied. The McKittricks opposed the motion, arguing that the condition of "insurability" in the McKittricks' policy for adding coverage on a newborn was undefined within the policy and constitutes an ambiguous term to be construed against the insurer. The motion was heard on July 18, 2002, and after hearing the arguments of counsel the court granted the motion for summary judgment. This appeal followed.

DISCUSSION
Summary Judgment
The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action, except those disallowed by law. The procedure is favored and must be construed to accomplish these ends. La. C.C.P. art. 966(A)(2). The motion will be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, show that there is no genuine issue as to a material fact, and that mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B). When a motion is made and supported as required by La. C.C.P. art. 966, the adverse party may not rest on the mere allegations or denials of his pleading, but his response must set forth specific facts showing a genuine issue for trial. Otherwise, summary judgment, if appropriate, shall be rendered against him. La. C.C.P. art. 967; McKoin v. State Farm Fire and Cas. Co., 36,429 (La.App.2d Cir.10/23/02), 830 So.2d 437. Appellate courts review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Independent Fire Ins. Co. v. Sunbeam Corp., 99-2257 (La.2/29/00), 755 So.2d 226; McKoin, supra.
Under the provisions of La. C.C.P. art. 966(C)(2), when a party moving for summary judgment will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense. Instead, it requires the party to point out the absence of factual support for one or more elements essential to such claim. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.
The health insurance policy purchased by Mrs. McKittrick specifically provided that when a child is born to an insured holding "Subscriber Only" coverage, the following conditions applied:
a. If a completed Change of Status Card is received by the Company prior to birth or within thirty (30) days of the child's birth, coverage for the child will be effective from the date of birth, subject to evidence of insurability. (Emphasis ours).

*580 b. If a completed Change of Status Card is received by the Company more than thirty (30) days after the birth, coverage for the child will be subject to evidence of insurability and will be effective on the first billing date following approval of the evidence of insurability.
It is uncontested that the "change of status card" was submitted within the 30 days required by the policy. Therefore, the question of whether coverage should have been extended retroactive to the birth of Leigha hinges on the determination of her insurability. The McKittricks argue that because insurability is not defined within the insurance contract, it is an ambiguous term that ought to be construed against the insurer in such a way as to automatically extend coverage in this case. On this point, we disagree.
While it is true that the term insurability is not defined within the contract, that factor alone does not make the term ambiguous. Words and phrases used in a policy are to be construed using their plain, ordinary, and generally prevailing meaning unless the words have acquired a technical meaning. La. C.C. art.2047. In analyzing a policy provision, the words, often being terms of art, must be given their technical meaning. When technical words are unambiguous and the parties' intent is clear, the insurance contract will be enforced as written. Blackburn v. Nat'l Union Fire Ins. Co. of Pittsburgh, 00-2668 (La.04/03/01), 784 So.2d 637.
In insurance parlance the term "insurability" clearly refers to the willingness of an insurer to accept a particular risk using whatever guidelines and information it desires as the yardstick against which to determine the acceptability of those risks; and, with the exception that the determination should be made in good faith, the question of "insurability" is one which rests solely within the prerogative of the insuring company. In determining whether a policy affords coverage for a particular claim, it is the burden of the alleged insured to establish the existence of the policy sued on. Doerr v. Mobil Oil Corp. XXXX-XXXX (La.12/19/00), 774 So.2d 119 and Boyd v. White, 123 So.2d 835 (La.App. 2d Cir.1960). Absent some evidence that the determination of insurability was made in bad faith, Blue Cross was not contractually bound to extend coverage for Leigha retroactive to her date of birth and, as such, summary judgment was appropriate.

CONCLUSION
For the reasons cited above, the judgment of the trial court granting Blue Cross' motion for summary judgment is hereby affirmed, and the costs of this appeal are assessed against the plaintiffs.
AFFIRMED.