United States Court of Appeals
Fifth Circuit

**F I L E D**

**August 4, 2005**

Charles R. Fulbruge III
Clerk

REVISED AUGUST 25, 2005

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

————————

No. 04-30608

————————

RIVERWOOD INTERNATIONAL CORP; ET AL

Plaintiffs,

GRAPHIC PACKAGING INTERNATIONAL INC, formerly known as
Riverwood International Corp

Plaintiff - Appellant

v.

EMPLOYERS INSURANCE OF WAUSAU; ET AL

Defendants

EMPLOYERS INSURANCE OF WAUSAU

Defendant - Appellee

————————————————————————————————

Appeal from the United States District Court
for the Western District of Louisiana

————————————————————————————————

Before KING, Chief Judge, and BENAVIDES and STEWART, Circuit
Judges.

KING, Chief Judge:

This appeal concerns whether an asbestos-related disease is
a "bodily injury by accident" as that term is interpreted under
several workers' compensation and employers' liability insurance
policies.  Because we agree that the policies are subject to only
one reasonable interpretation--that an asbestos-related injury is

-1-

not a "bodily injury by accident" under the policies in question--we AFFIRM the district court's entry of summary judgment in favor of Defendant-Appellee Employers Insurance of Wausau.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff-Appellant Graphic Packaging International, Inc., formerly known as Riverwood International Corp. ("Riverwood"), owns and operates a paperboard manufacturing facility in West Monroe, Louisiana.  Riverwood purchased a series of Excess Workers' Compensation and Employers' Liability policies (collectively, the "Policies") from Employers Insurance of Wausau ("Wausau"), which provided coverage from May 1974 to January 1984.[1]  Beginning in early 2000, numerous present and former employees sued Riverwood, seeking damages for injuries, including asbestosis and other asbestos-related diseases, allegedly caused by exposure to asbestos while working at the West Monroe facility.  Riverwood settled 260 employee claims for a lump sum of $1.513 million.

Riverwood sent notice letters to its multiple insurers, including Wausau, advising them of the asbestos-related claims. The notice letters identified the employees' claims as "bodily injury by disease" claims.  Wausau denied coverage based on the thirty-six month exclusion provision in the Policies, which

---

[1]   Riverwood also purchased standard workers' compensation and employers' liability policies, but limited coverage under those policies to loggers.

provides that "bodily injury by disease" claims are excluded from

coverage if not brought within thirty-six months after the end of

the policy period.[2]  Wausau also denied coverage on the basis

that Riverwood could not meet the self-insured retention ("SIR")

requirements in the Policies.[3]  Accordingly, Wausau refused to

contribute to the $1.513 million settlement.

On March 12, 2000, Riverwood filed a suit seeking indemnity

from Wausau under, inter alia, the Policies for the underlying

---

[2]    The pertinent provision reads:

EXCLUSIONS
This policy does not apply . . . .
    (e) under paragraph B of Insuring
    Agreement I, to bodily injury by disease
    unless prior to thirty-six months after
    the end of the policy period written
    claim is made or suit is brought against
    the insured for damages because of such
    injury or death resulting
    therefrom . . . .

[3]    The SIR provision reads:

III. RETENTION AND INDEMNITY. The insured
shall retain as its own net retention loss in
the amount of the retention stated in the
declarations and the company hereby agrees to
indemnify the insured against loss in excess
of such retention, subject to the limit of
indemnity stated in the declarations;
provided, that the retention and limit of
indemnity apply as respects:
    (a) bodily injury by accident, including
    death resulting therefrom, sustained by
    one or more employees in each accident,
    or
    (b) bodily injury by disease, including
    death resulting therefrom, sustained by
    each employee.

-3-

asbestos claims.[4]  On January 22, 2002, Wausau filed a motion for partial summary judgment, seeking enforcement of the thirty-six month exclusion provision.  It is undisputed that none of the asbestos claims was asserted against Riverwood within thirty-six months of the Policies' expiration.  The district court, however, denied the motion, relying on the recommendation of the magistrate judge, who reasoned that the Policies' language was ambiguous because an issue of fact existed regarding whether an asbestos-related disease is a "bodily injury by disease" or a "bodily injury by accident" under the Policies.

On October 14, 2003, Wausau filed another motion for summary judgment, arguing that: (1) the employees' claims were "bodily injury by disease" claims barred by the thirty-six month exclusion provision; and (2) Riverwood could not satisfy its SIR requirements as required to trigger coverage under the Policies regardless of whether the claims were treated as "bodily injury by disease" or "bodily injury by accident" claims.  On February 13, 2004, based on the magistrate judge's recommendation, the court granted Wausau's motion.

---

[4]     Riverwood also filed suit seeking indemnity under various standard workers' compensation and employers' liability policies and blanket liability policies it had purchased.  The claims regarding the blanket liability policies were voluntarily dismissed.  Furthermore, the court granted summary judgment against Riverwood on the standard policies because they did not cover any of the employees' claims at issue.  Riverwood does not appeal as to that determination.  Initially, Riverwood had also sought coverage for claims asserted by non-employees, but those claims were also voluntarily dismissed.

With respect to the thirty-six month exclusion provision, the court reconsidered its determination of ambiguity and concluded that, based on the evidence, "[t]he only reasonable conclusion is that the underlying claims in question in this lawsuit involve bodily injury by disease. Therefore, the 36-month exclusion applies and should be enforced as written." The court reasoned, inter alia, that the "vast majority of courts considering the issue have also treated asbestos-related claims as injury by disease under excess [w]orker's [c]ompensation/[e]mployer [l]iability policies with the same or nearly the same policy definitions." (citing Hamilton v. Anco Insulation, Inc., 844 So. 2d 893 (La. Ct. App. 1st Cir. 2003), Hubbs v. Anco Insulations, Inc., 747 So. 2d 804 (La. Ct. App. 1st Cir. 1999), Rareshide v. Mobil Oil Corp., 719 So. 2d 494 (La. Ct. App. 4th Cir. 1998), Laurendine v. Fischbach & Moore, Inc., 398 So. 2d 1220 (La. Ct. App. 4th Cir. 1981), and Froust v. Coating Specialists, Inc., 364 F. Supp. 1154 (E.D. La. 1973)).

With respect to the SIR issue, the court noted that because the claims were "bodily injury by disease" claims, a separate SIR had to be met for each claim. However, no individual claim exceeded the smallest per-employee SIR ($100,000), much less the $500,000 SIR on the later policies.[5] The court also noted that

_____

[5] The SIR amount for the years covered by the Policies were: (1) $100,000 per year for 1974-1977; (2) $250,000 per year for 1977-1980; and (3) $500,000 per year for 1980-1984. The court noted that for the settled claims, only Walter Graves's $400,000 claim could possibly satisfy the SIR, but Graves's last

-5-

even if the claims were "bodily injury by accident" claims, Riverwood would have to meet its SIR requirement for each accident. However, Riverwood failed to present any evidence to show it could meet its SIR requirement for each accident. In addition, the court stated that because Riverwood was seeking to trigger coverage under multiple policies for damages stemming from multiple years of exposure, the plaintiffs' losses had to be allocated on a pro rata basis across all the years of exposure. Under this method, the court concluded that Riverwood could not satisfy a single SIR for any employee in any policy year. The court rejected Riverwood's argument that all the claims should be construed as arising out of a single accident because Riverwood did not present any evidence that all of the claimants were exposed by one specific accident at the same time and at a common location.

On appeal, Riverwood argues that a genuine issue of fact remains as to whether it is entitled to coverage under the Policies. Specifically, Riverwood argues that the language of the Policies at issue is ambiguous. With regard to the SIR issue, Riverwood argues that there is sufficient evidence to support a jury finding that it could satisfy at least one SIR under the Policies. Riverwood further argues that under Fifth Circuit precedent, its SIRs should be apportioned pro rata.

## II. STANDARD OF REVIEW

exposure was in 1986, a date not within the policy period.

This court reviews a grant of summary judgment de novo, applying the same standards as the district court. Burch v. City of Nacogdoches, 174 F.3d 615, 618 (5th Cir. 1999). Summary judgment is proper if the record, taken as a whole, shows that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). To overcome summary judgment, "the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (internal quotation marks and emphasis omitted). The court must view the evidence in the light most favorable to the nonmovant, drawing all reasonable inferences in the nonmovant's favor. King v. Chide, 974 F.2d 653, 656 (5th Cir. 1992).

### III. ANALYSIS

Riverwood argues that a genuine issue of material fact exists as to whether the underlying asbestos claims are "bodily injury by disease" or "bodily injury by accident" claims under the Policies.

Under Louisiana law, an insurance policy is a contract between the parties, and it should be construed according to the general rules of contract interpretation set forth in the Civil Code. La. Ins. Guar. Ass'n v. Interstate Fire & Cas. Co., 630 So. 2d 759, 763 (La. 1994). A contract is ambiguous if, after applying the established rules of contract interpretation, the

contract is uncertain as to the parties' intent and susceptible

to more than one reasonable interpretation under the

circumstances. <u>Shocklee v. Mass. Mut. Life Ins. Co.</u>, 369 F.3d

437, 440 (5th Cir. 2004) (quoting <u>In re Liljeberg Enters., Inc.</u>,

304 F.3d 410, 440 (5th Cir. 2002)). Applying the rules of

contract interpretation, we conclude that the district court

properly determined that the Policies are subject to only one

reasonable interpretation--that an asbestos-related injury is not

a "bodily injury by accident" under the policies in question.

The Policies provide:

I. COVERAGE. This policy applies to loss sustained by
the insured on account of . . .
    B. sums which the insured shall become legally obligated
    to pay as damages because of bodily injury by accident or
    disease . . . .

II. APPLICATION OF POLICY. This policy applies only to injury
    (1) by accident occurring during the policy period,
    or
    (2) by disease caused or aggravated by exposure of
    which the last day of the last exposure, in the
    employment of the insured, to conditions causing
    the disease occurs during the policy period. . . .

V. DEFINITIONS. . . .
    (C) Bodily Injury by Accident; Bodily Injury
    by Disease. The contraction of disease is not
    an accident within the meaning of the word
    "accident" in the term "bodily injury by
    accident" and only such disease as results
    directly from a bodily injury by accident is
    included within the term "bodily injury by
    accident." The term "bodily injury by
    disease" includes only such disease as is not
    included within the term "bodily injury by
    accident."

Riverwood asserts that the language is ambiguous because the

-8-

policy itself does not define the word "accident."  The fact that a term is not defined in a policy, however, does not alone make it ambiguous.  McKittrick v. La. Health Serv. and Indem. Co., 843 So. 2d 577, 580 (La. Ct. App. 2003).  Instead, the term "accident" must be given its plain meaning.  LA. CIV. CODE ANN. art. 2047 (West 1987).  Riverwood contends that the common understanding of the undefined term controls, and it asserts that the word "accident" is defined in the dictionary as, inter alia, an unforseen and unplanned event or circumstance.  Because the exposure giving rise to the asbestos claims can reasonably be described as an unforseen and unplanned event or circumstance, Riverwood concludes the definition of "accident" encompasses the exposure to asbestos that occurred in this case.  However, if the term we are seeking to define is a technical term, it must be given its technical meaning.  LA. CIV. CODE ANN. art. 2047 (West 1987); McKittrick, 843 So. 2d at 580.  Wausau asserts, and Riverwood does not dispute, that the Policies import workers' compensation law.[6]  In addition, under Louisiana contract law, "[w]ords susceptible of different meanings must be interpreted as having the meaning that best conforms to the object of the contract."  LA. CIV. CODE ANN. art. 2048 (West 1987).  The object of the Policies at issue is to provide workers' compensation and employers' liability insurance.  Under workers' compensation law,

_____

[6]    The Policies do not state affirmatively that workers' compensation law will govern the terms.  However, workers' compensation law is referenced throughout the Policies.

-9-

"accident" is defined as "an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration." LA. REV. STAT. ANN. § 23:1021(1) (West 1998). This definition suggests that an asbestos-related disease cannot be considered an "accident" since exposure to asbestos is normally not violent and does not, at the time of exposure, produce objective findings of an injury. Rather, an asbestos-related disease has a long latency period and normally manifests itself after continued exposure. See Hamilton, 844 So. 2d at 897.

Riverwood asserts, however, that even if an asbestos-related disease is considered a "bodily injury by disease," it may also reasonably be construed as a "bodily injury by accident" because a disease that results from an accident can constitute a "bodily injury by accident." As Wausau notes, however, when the plain terms of the Policies are viewed as a whole, it is clear that an asbestos-related disease is not a "bodily injury by accident," and any other conclusion would render the "bodily injury by disease" provision meaningless. Louisiana contract interpretation rules provide that every provision in a policy must be construed in the context of the policy as a whole; one policy provision is not to be construed separately. LA CIV. CODE ANN. art. 2050 (West 1987). In addition, if a provision is

-10-

susceptible to different meanings, it must be interpreted to have a meaning that renders it effective. LA. CIV. CODE ANN. art. 2049 (West 1987). According to the Policies, coverage for a "bodily injury by disease" claim is triggered if the last <u>exposure</u> occurred during the policy period and the claim is asserted within thirty-six months of the policy's expiration. Since an <u>exposure</u> is required to trigger coverage for a "bodily injury by disease" claim, a disease caused by an <u>exposure</u> should be considered a "bodily injury by disease." If an exposure equates to an accident, then a claim resulting from an exposure could be considered a "bodily injury by accident" claim. To interpret the Policies in this way would render the provision providing for "bodily injury by disease" claims (and the provision providing that disease claims are triggered by an exposure during the policy period) superfluous. Indeed, the Louisiana First Circuit Court of Appeal has recognized that "to find that disease that results from accidental contact with a foreign body, such as an asbestos fiber, is bodily injury by accident would be to subsume the definition of bodily injury by disease into the definition of bodily injury by accident." <u>Hubbs</u>, 747 So. 2d at 807-08. Importantly, the terms of the Policies suggest that a "bodily injury by disease" is mutually exclusive from a "bodily injury by accident." As Wausau points out, the Policies apply different trigger, reporting, and SIR requirements to "bodily injury by disease" and "bodily injury by accident" claims. Coverage for

-11-

"bodily injury by disease" claims is triggered by an injurious exposure during the policy period, the assertion of a claim within thirty-six months of the policy's expiration, and payment of the SIR for each employee. Coverage for "bodily injury by accident" claims, on the other hand, is triggered by an accident occurring during the policy period and payment of the SIR for each accident. Thus, we disagree with Riverwood's contention that an asbestos-related disease can also be construed as a "bodily injury by accident."

Our conclusion that an asbestos-related disease does not constitute a "bodily injury by accident" under the Policies is supported by Louisiana case law interpreting the exact same policy language. In Hubbs, the Louisiana First Circuit Court of Appeal concluded that asbestosis was a "bodily injury by disease" when confronted with the policy language before us. In Hubbs, the issue was whether asbestosis was a bodily injury by accident or by disease. 747 So. 2d at 806. The court found that "the contraction of asbestosis is not an accident within the meaning of the policy, and thus the thirty-six month exclusion applies." Id. at 808. The court reasoned that the "[p]olicy clearly states that the contraction of disease is not an accident within the meaning of the policy." Id. Riverwood, however, points to Faciane v. S. Shipbuilding Corp., 446 So. 2d 770 (La. Ct. App. 1984), for its contention that the Policies are subject to more than one reasonable interpretation. In Faciane, the Louisiana

Fourth Circuit Court of Appeal held that a genuine issue of material fact existed as to whether the appellant's injury, silicosis,[7] was a bodily injury by disease or by accident. Id. The court, faced with the same policy language in this case (the definition section of bodily injury by disease and accident), found the provision to be unclear because it seemed to exclude the contraction of a disease as a "bodily injury by accident" but also seemed to allow the contraction of some diseases to be classified as diseases by accident. Id. at 774. The court specifically stated:

> [t]o say the least this definition is unclear. On one hand it seems to exclude contraction of disease as an injury by accident. However, the next clause of the same sentence seems to allow the contraction of some diseases to be classified as accidental injury. Given these circumstances it seems that a genuine issue of material fact as to the classification of appellant's injury existed.

We are, however, unconvinced by the reasoning in Faciane and conclude that the reasoning in Hubbs, a more recent case, is more in line with the rules of contract interpretation espoused above. In addition, other courts have treated silicosis and asbestos-related injuries as bodily injuries by disease under policies containing the same language at issue here. See Froust, 364 F.

---

[7] Silicosis is similar to asbestosis and asbestos-related injuries. Silicosis results from exposure to silica, and the disease develops over time. Courts have not found any meaningful difference between silicosis and asbestosis that would merit distinction for present purposes between the two. See, e.g., Quick v. Murphy Oil Co., 446 So. 2d 775 (La. App. 4th Cir. 1982).

-13-

Supp. at 1154 (concluding that silicosis was a "bodily injury by disease"); <u>Hamilton</u>, 844 So. 2d at 893 (treating an asbestos-related disease, mesothelioma, as a "bodily injury by disease").

We therefore hold that the district court properly concluded that the only reasonable interpretation of the Policies is that an asbestos-related disease is not a "bodily injury by accident" but is rather a "bodily injury by disease."  Accordingly, the thirty-six month exclusion provision applies.[8]  Because Riverwood is not entitled to coverage under the thirty-six month exclusion provision, we need not address its arguments with regard to the SIR issue.

## IV. CONCLUSION

For the foregoing reasons, we conclude that the district court properly granted Wausau's motion for summary judgment. Accordingly, the judgment of the district court is AFFIRMED.

---

[8]      In light of our conclusion, we find it unnecessary to address Riverwood's arguments that the district court erred in relying on extrinsic evidence and in failing to acknowledge, address, or view in the most favorable light evidence it presented.  To the extent that the district court erred, if it erred at all, we hold that summary judgment was proper according to the rules of contract interpretation and the case law discussed above. <u>Holtzclaw v. DSC Communications Corp.</u>, 255 F.3d 254, 258 (5th Cir. 2001) (stating that the court may affirm summary judgment on any ground supported by the record, even if it is different than that of the district court).