# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

April 20, 2009

Charles R. Fulbruge III
Clerk

No. 08-30954
Summary Calendar

FIDELITY & CASUALTY COMPANY OF NEW YORK

Plaintiff

v.

BUCK KREIHS COMPANY INC

Defendant

_____

JIMMY LANG

Plaintiff

v.

EAGLE INC

Defendant

BUCK KREIHS COMPANY INC, as successor to Sank Inc and formerly known as J.K.T. and Associates, Inc.

Defendant - Third-Party Plaintiff - Appellant

v.

CHICAGO INSURANCE COMPANY; INTERSTATE FIRE AND CASUALTY COMPANY

Third-Party Defendants - Appellees

_____

CHICAGO INSURANCE COMPANY; INTERSTATE FIRE AND CASUALTY COMPANY

No. 08-30954

Plaintiffs - Appellees

v.

BUCK KREIHS COMPANY INC, as successor to Sank Inc and formerly
known as J.K.T. and Associates, Inc

Defendants - Appellants

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC Nos. 2:06-CV-2389, 2:06-CV-2311, 2:06-CV-2310

Before SMITH, STEWART, and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

Buck Kreihs Company Inc. ("Buck Kreihs") appeals the district court's summary judgment in favor of Chicago Insurance Company ("Chicago") and Interstate Fire and Casualty Company ("Interstate") (together "Insurers") in a declaratory judgment action to determine insurance coverage of asbestos-related claims by former Buck Kreihs employees. We AFFIRM.

## I. BACKGROUND

Buck Kreihs was incorporated in 1963 to perform maintenance and repairs on ships docked in the Port of New Orleans. Over the past 10 years, the company has become a defendant in a number of claims by former employees arising out of exposure to asbestos. These claims span several decades, some involving alleged exposures as far back as the 1960s.

In 1974, Buck Kreihs purchased policies of insurance, including Comprehensive General Liability ("CGL") and Employer's Liability/Workmen's

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Compensation ("Employer's Liability") policies, from Chicago and an excess coverage policy from Interstate. The policies were in effect from March 1, 1974, through January 15, 1975, part of the time during which the asbestos exposures occurred. Interstate's policy listed Buck Kreihs as the insured party and is on a "following form" basis, incorporating the identical coverages, provisions, and exclusions as the underlying CGL and Employer's Liability policies issued by Chicago.[1]

The CGL policy contains an exclusion of coverage for bodily injury to any employees of Buck Kreihs. The Employer's Liability policy excludes coverage of claims for bodily injury by disease where the claims were not made or suit was not filed within thirty-six months of the termination of the policy, which would have been January 15, 1978. The CGL policy also incorporates this exclusion.

In August 2007, Chicago and Interstate sued for a declaratory judgment determining that their policies do not provide coverage to Buck Kreihs regarding a group of pending asbestos exposure cases involving former employees. Buck Kreihs then filed a counter claim alleging the Insurers' bad faith in handling the claims.[2] Chicago and Interstate moved for summary judgment and dismissal of Buck Kreihs's counterclaim. On October 9, 2007, the district court granted summary judgment to Insurers on their declaratory judgment action, but denied it as to dismissal of Buck Kreihs's counterclaim. Relying on this court's interpretation of similar policies under Louisiana law in *Riverwood International Corporation v. Employers Insurance of Wasau*, 420 F.3d 378 (5th Cir. 2005), as well as recent decisions of the Louisiana courts, the district court concluded that

---

[1] Buck Kreihs acknowledges that any claims excluded under the Chicago policies are also excluded under the Interstate policy, and therefore we address only the language of the Chicago policies.

[2] The case was then consolidated with a declaratory action by another insurance company, which has settled.

the policies' exclusion of coverage of "bodily injury by disease" unless the claim is brought within thirty-six months of the end of the policy excluded coverage of the asbestos-related suits. On September 16, 2008, the district court entered final judgment pursuant to Rule 54(b) of the Federal Rules of Civil Procedure.

## II. DISCUSSION

### A. *Standard of Review*

We review the district court's grant of summary judgment *de novo*, applying the same standards as the district court. *Riverwood Int'l Corp.*, 420 F.3d at 382. Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).

### B. *The "Bodily Injury by Disease" Exclusion*

"Under Louisiana law, an insurance policy is a contract between the parties, and it should be construed according to the general rules of contract interpretation set forth in the Civil Code." *Riverwood Int'l Corp.*, 420 F.3d at 382 (citing *La. Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.*, 630 So.2d 759, 763 (La. 1994)). "Interpretation of a contract is the determination of the common intent of the parties," and "[w]hen the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." LA. CIV. CODE ANN. arts. 2045 and 2046 (1985). We conclude that the district court properly determined that the insurance policies at issue do not provide coverage to Buck Kreihs for the asbestos-related claims of its former employees.

#### 1. Applicability of the Employer's Liability policy

The Employer's Liability policy issued by Chicago provides the following relevant coverage, subject to the policy's exclusions and limitations:

> Coverage B – Employer's Liability: To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury by accident or disease . . . sustained in the United States of America, its territories or possessions, or Canada by his employment by the insured either in operations in a State designated in Territorial Limits or in operations necessary or incidental thereto.

In addition, the policy contains several exclusions, including the following:

> This insurance does not apply:
> . . .
> (e) Under Coverage B, to bodily injury by disease unless prior to thirty-six months after the end of the Policy Period written claim is made or suit is brought against the Insured for damages because of such injury or death resulting therefrom . . . .

This exclusion ("Exclusion (e)") was also added to the CGL policy, as discussed below. The Employer's Liability policy defines bodily injury by accident and by disease as follows:

> (c) Bodily Injury by Accident; Bodily Injury by Disease.
> The contraction by disease is not an accident within the meaning of the word "accident" in the term "bodily injury by accident" and only such disease as results directly from a bodily injury by accident is included within the term "bodily injury by accident". The term "bodily injury by disease" includes only such disease as is not included within the term "bodily injury by accident".

Buck Kreihs argues that the thirty-six-month reporting requirement of Exclusion (e) does not apply to the employees' asbestos-related diseases because those claims are instead "bodily injury by accident," the accident being the impact of asbestos fibers on the workers' lungs. However, our court previously rejected this argument in interpreting an identical definition and materially indistinguishable thirty-six-month reporting requirement under Louisiana law. *See Riverwood Int'l Corp.*, 420 F.3d at 382-85. In *Riverwood*, we held that "the only reasonable interpretation of the [p]olicies is that an asbestos-related disease is not a 'bodily injury by accident' but is rather a 'bodily injury by disease.'

Accordingly, the thirty-six month exclusion provision applies." *Id.* at 385. Comparing the instant policies to those interpreted in *Riverwood*,[3] we find no material differences and thus the holding of *Riverwood* controls this appeal. The thirty-six month reporting requirement of Exclusion (e) applies.[4] Because none of the underlying claims at issue were asserted prior to January 15, 1978, thirty-six months after the policies' termination, the district court correctly held that there is no coverage under the Employer's Liability policy. We now turn to consider the CGL policy, which we similarly conclude does not provide coverage for the asbestos-related claims.

2.      Applicability of the CGL Policy

The CGL policy contains several exclusions of coverage, including the following:

> This insurance does not apply:
> . . . .
> (j) to bodily **injury to any employee of the insured** arising out of and in the course of his employment by the insured or to any

---

[3] Both the definition of "Bodily Injury by Accident; Bodily Injury by Disease" and the thirty-six month bodily injury by disease reporting requirement in the policies at issue in *Riverwood* are identical to those contained in the Employer's Liability policy Chicago issued to Buck Kreihs. *See Riverwood*, 420 F.3d at 380 n.2, 382-83.

[4] Buck Kreihs argues that *Riverwood* is not applicable either because its interpretation of Louisiana law is contradicted by the holdings of Louisiana courts or because its holding was in conflict with prior Fifth Circuit case law on the question. However, the Fifth Circuit cases Buck Kreihs points to address what the "bodily injury" is and when it occurs in the context of asbestos-related diseases. *See Guaranty Nat'l Ins. Co. v. Azrock Indus. Inc.*, 211 F.3d 239, 249-50 (5th Cir. 2000) (concluding under Texas law that personal injury caused when individual was exposed to asbestos, not when the disease manifested itself); *Ducre v. Executive Officers of Halter Marine*, 752 F.2d 976, 993-94 (5th Cir. 1985) (holding that "exposure theory" applied to determine when injury occurred in silicon-exposure context); *Porter v. American Optical Group*, 641 F.2d 1128, 1144-45 (5th Cir. 1981) (rejecting "manifestation theory" and adopting "injurious exposure" theory to determine when employee's "bodily injury" occurred for insurance purposes). Those cases did not address the question presented in *Riverwood*, whether asbestos-related disease, acknowledged to be a "bodily injury," was one "by disease" or "by accident." Further, Buck Kreihs points to no intervening change in Louisiana law since *Riverwood* that renders its holding clearly wrong.

> obligation of the insured to indemnify another because of damages arising out of such injury.

(emphasis added) ("Exclusion (j)"). The CGL policy's definition of "Insured" includes Buck Kreihs and also "any executive officer, director or stockholder thereof while acting within the scope of his duties as such."

Insurers argue that the CGL does not provide coverage to the asbestos-related claims because Exclusion (j) specifically excludes bodily injury to any employee arising out of his employment by Buck Kreihs, and that, in any event, Exclusion (e) also excludes coverage under this policy. Buck Kreihs contends that the CGL applies because the policy provides coverage for actions against Buck Kreihs's executives under the definition of "Insured" and, at the time the coverage was contracted Louisiana allowed actions by former employees against their employer's executive officers. *See Sanders v. Ashland Oil, Inc.*, 656 So.2d 643, 648-49 (La. Ct. App. 1995) (holding similar employee injury exclusion was inapplicable as to claims against company's owner because employees were not employed by the owner personally, only by the company, and the owner fell under the policy's definition of Insured). Buck Kreihs asserts that Exclusion (e) should not be interpreted to exclude coverage under the CGL policy because the CGL policy does not adopt the definitions of the Employer's Liability policy and therefore Exclusion (e) creates ambiguities that must be resolved in favor of coverage.

We need not decide whether the definition of "Insured" and then-existing Louisiana actions against executives potentially implicate the CGL policy, because the CGL includes Exclusion (e) of the Employer's Liability policy. Assuming that the CGL policy is potentially applicable because of the viability of actions asserted against executive officers of Buck Kreihs, we conclude that Exclusion (e) excludes coverage of the asbestos-related employee claims under this policy as well.

The CGL policy also incorporates several exclusions from the Employer's Liability policy, including:

> This insurance does not apply:
>
> . . . .
>
> (e) Under Coverage B,[5] to bodily injury by disease unless prior to thirty-six months after the end of the Policy Period written claim is made or suit is brought against the Insured for damages because of such injury or death resulting therefrom. . . .

The CGL policy does not contain a definition of the term "bodily injury by disease" and does not contain a provision adopting the definitions of the Employer's Liability policy.

"Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole." LA. CIV. CODE art 2050. We see no reason that "bodily injury by disease" should be defined one way in the Employer's Liability policy and another in the CGL policy, particularly as Buck Kreihs urges that we consider both policies together as a cohesive whole. Arguably the interpretation of the phrase and applicability of *Riverwood* is a closer question in the CGL policy because, unlike the Employer's Liability policy, it is not tied to workers compensation law, which was part of the rationale of the *Riverwood* court in adopting a technical definition of "accident" over the common definition to find the asbestos-related claims to be bodily injury "by disease" rather than "by accident." *Riverwood Int'l Corp.*, 420 F.3d at 383; LA. CIV. CODE art. 2047 (requiring words in a contract to be given their generally prevailing meaning, except that technical terms must be given their technical meaning when the contract involves a technical matter). However, Exclusion (e) is not an original, freestanding provision of the CGL, but was instead attached, along with eight other exclusions, verbatim from the

---

[5] In the Employers Liability policy, Coverage B refers to Employer's Liability, as opposed to Coverage A: Workmen's Compensation.

Employer's Liability policy. If in adding Exclusion (e) to the CGL policy the parties had intended "bodily injury by disease" to mean something different from what it means in the Employer's Liability policy from which it was adopted, they would have defined the provision as necessary to make that distinction.

## C.     *Public Policy*

Finally, Buck Kreihs argues that the Chicago policies cannot be interpreted to exclude coverage of the former employees' asbestos claims because the exclusions and limitations that Insurers invoke conflict with public policy. Insurers counter that Buck Kreihs must be held to a reasonable expectation of coverage standard in light of the plain language of the policies. Insurers further note that there is no evidence that Buck Kreihs attempted to obtain coverage for long-term exposure.

"Unless there is a conflict with statutory provisions or public policy, insurers are entitled to limit their liability and to impose and enforce reasonable conditions upon the policy obligations they contractually assume." *Anderson v. Ichinose*, 760 So. 2d 302, 306 (La. 1999). Louisiana courts have rejected the proposition that the application of a defined-length reporting requirement, such as the thirty-six-month period in Exclusion (e), contradicts public policy. *See Hubbs v. Anco Insulations, Inc.*, 747 So. 2d 804, 806-07 (La. Ct. App. 1999) (holding thirty-six-month reporting requirement in exclusion of coverage for bodily injury by disease did not violate public policy because there was no evidence that insured reasonably expected coverage for long-term exposure claims, relying on *Anderson*, 760 So. 2d at 304, n.3, n.4); *cf. Anderson*, 760 So. 2d at 306-07 (holding that there was no public policy violation by professional-liability insurance policy provision requiring claims to be made and reported during the policy period).

9

## III. CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.