UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

January 21, 2009

Charles R. Fulbruge III
Clerk

_____

No. 07-30313

_____

JAMES H. MOORE, JR., AND
KENNETH E. CARROLL,

                                            Plaintiffs-Appellants,

v.

STATE FARM FIRE & CASUALTY
COMPANY AND STATE FARM
GENERAL INSURANCE COMPANY,

                                            Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Louisiana

_____

Before SMITH and PRADO, Circuit Judges, and YEAKEL, District Judge.[*]

LEE YEAKEL, District Judge:

    This appeal arises from State Farm Fire and Casualty Company and State
Farm General Insurance Company's (together "State Farm") conversion of certain
Louisiana homeowner insurance policy forms, namely State Farm's forms HO-1,
HO-3, and HO-5, to form HO-W, upon each existing policy's expiration and

---

   [*] District Judge of the Western District of Texas, sitting by designation.

renewal by the policy holder. See La. Rev. Stat. Ann. § 22:635.4 ("Section 22:635.4"). James H. Moore, Jr. and Kenneth E. Carroll commenced this action alleging that State Farm's policy-form conversions are contrary to Louisiana law and effectively constitute an improper cancellation or nonrenewal of the policies originally issued on forms HO-1, HO-3, and HO-5.[1] The district court, by granting State Farm's motion for partial summary judgment and motion for judgment on the pleadings and denying Moore's motion for summary judgment, determined that State Farm's policy-form conversions complied with Louisiana law. Moore appeals, reiterating arguments presented to the district court. We affirm the district court's judgment.

## I. BACKGROUND

### A. Facts and administrative proceedings

On October 30, 2000, State Farm submitted to the Louisiana Insurance Rating Commission ("Commission") a request for approval of rates to be associated with a new homeowner policy form, which would become known as the HO-W form. On November 2, State Farm submitted for approval to the

---

[1] Moore and Carroll commenced suit on behalf of themselves and a putative class of insureds. As the district court noted, any precertification decision, although persuasive with regard to claims of any other members of the putative class, binds only the named plaintiffs. See, e.g., Floyd v. Bowen, 833 F.2d 529, 534 (5th Cir. 1987). Carroll died during the pendency of this litigation, however, no substitution of parties occurred. Carroll appears as an appellant in Appellants' brief. The court will refer to Moore and Carroll collectively as "Moore".

Louisiana Department of Insurance ("Department") the HO-W policy form for review.  The Commission approved the rates and the Department approved the HO-W form.  After obtaining these approvals, State Farm began issuing policies on the HO-W form on April 1, 2001, but only to new customers.  To its existing customers, State Farm continued to offer HO-1, HO-3, and HO-5 form policies, all of which had rates previously approved by the Commission and forms previously approved by the Department.

In February 2002, State Farm made a rate filing with the Commission for new rates related to the HO-1, HO-3, and HO-5 forms.  The Commission deferred action on this filing, and on May 3 State Farm withdrew the request.

On May 22, State Farm submitted another rate filing requesting new rates for all of its policy forms, including the HO-W form.  The filing also included a statement by State Farm that it intended to "commence converting all [policy forms HO-1, HO-3, and HO-5] to the HO-W policy form."  The Commission approved State Farm's rate request, which became effective for all polices renewed on or after August 1, 2002, including those using the HO-W policy form. Although the rates were approved, James Donelon, the Acting Executive Counsel for the Commissioner of Insurance, opined that current law prohibited State Farm's conversion to the proposed HO-W form.  Although State Farm disagreed

3

with Donelon, it delayed conversion to the HO-W form, pending final judicial or legislative resolution of the issue.

In April 2004, State Farm filed a declaratory-judgment action in Louisiana state district court, seeking a declaration that the conversion to the HO-W form would not violate Louisiana's nonrenewal law. However, the 2004 session of the Louisiana Legislature enacted Act 358.[2] Act 358 provides that an insurer may "convert an entire class of homeowner policies to another homeowner policy form which has been submitted to and approved by the commissioner as those homeowner policies are renewed," and that such conversion "shall not constitute a cancellation or nonrenewal of any policy." Section 22:635.4. In light of the legislation, State Farm dismissed the state court declaratory-judgment action.

In August 2004, State Farm notified the Commissioner that it intended to convert its insureds' HO-1, HO-3, and HO-5 homeowner-insurance policy forms to the HO-W policy form. State Farm advised the Commissioner that effective February 1, 2005, as each of its insureds' current homeowner-insurance policies expired, State Farm would issue new policies, using the HO-W form. As the Commissioner took no action to disapprove the conversion within the statutory 45-day period after State Farm's notice, the conversion was deemed approved.

---

[2] Act 358 was codified as La. Rev. Stat. Ann. section 22:635.4.

4

See Section 22:635.4. On February 1, State Farm began issuing new policies to its insureds as each existing policy expired, using the HO-W form.[3]

By letters of February 25 and March 2, 2005, Moore requested a hearing before the Commission, alleging that State Farm's HO-W form conversion constituted an improper de facto premium increase without the statutorily required preapproval by the Commission. State Farm responded that the conversion "could potentially effect a rate change." The Commission held a hearing on Moore's allegations, and determined that the conversion potentially could effect a rate hike, instituted unilaterally without Commission approval. On May 6, State Farm requested a rehearing before the Commission. Following a June 21 hearing, the Commission ruled that State Farm's conversion did not involve a rate increase.

B. Court actions

On May 11, 2005, Moore, on behalf of a putative class of Louisiana State Farm homeowner insureds, filed this action in Louisiana state district court against State Farm, naming as nominal defendants the Commission and the State Attorney General, and seeking a declaratory judgment, injunctive relief, damages, and a writ of mandamus. Moore alleges that State Farm violated

---

[3] The HO-W conversion was concluded by January 2006.

Louisiana law by failing to provide notice to the Commission or Department or to obtain either entity's approval before implementing the conversion, and that State Farm failed to submit for review the rate change associated with the conversion. State Farm removed the action to federal court under the Class Action Fairness Act. See 28 U.S.C. § 1453.[4]

On July 19, Moore filed a second class action against State Farm and the Commission, appealing the June 21, 2005 decision of the Commission and alleging the same claims and seeking the same relief as Moore I. State Farm likewise removed the action to federal court.[5]

Asserting immunity from suit under the Eleventh Amendment, the state defendants successfully moved to sever and remand to state court Moore's claims alleged against them, leaving the remaining parties Moore and State Farm. State Farm moved for summary judgment in Moore I and partial summary judgment and judgment on the pleadings in Moore II. Moore filed cross motions for partial summary judgment. After extensive briefing and oral argument, the district

---

[4] This action became know as Moore I. Moore v. State of Louisiana, No. 05-374 (M. D. La. removed May 23, 2005).

[5] This action became know as Moore II. Moore v. State of Louisiana, No. 05-1008 (M. D. La. removed Aug. 8, 2005). On January 31, 2006, the district court ordered Moore I and Moore II "consolidated" as Moore I. Although the January 31 order provides that the causes were consolidated, the district court considered motions filed in each cause and rendered dispositive orders that reference both cause numbers.

court rendered its Ruling and Order on November 17, 2006, which addressed both causes.[6]

### C. District-court rulings

The district court determined that, at the end of the day, the parties' motions "boil down to the same issue: Whether or not State Farm's conversion of its HO-1, HO-3, and HO-5 homeowner policies to its HO-W homeowner policy form, effective February 1, 2005, was in violation of Louisiana law?"

In the district court, State Farm argued that, as a matter of law, conversion to the HO-W form is proper under Section 22.635.4 and the Louisiana Legislature enacted the provision for the very purpose State Farm seeks, to convert insurance policy forms. Moore argued that the conversion constituted a cancellation or nonrenewal of existing homeowner policies and violates the prohibitory laws of

---

[6] Following the April 26, 2006 hearing before the Commission, the Commission commenced a lawsuit in Louisiana state court against State Farm seeking a ruling regarding the legality of State Farm's policy-form conversion and Moore moved to intervene as plaintiff in the action. After Moore's intervention, the Commission moved to dismiss the entire case, and the court dismissed only the Commission's claims, leaving Moore's claims viable. State Farm then removed the action to federal court. James H. Moore, Jr. and Kenneth E. Carroll v. State Farm Fire and Casualty Company, No. 05-1355 (M. D. La. removed Nov. 23, 2005) (Moore III). The district court remanded Moore III to state court holding that the amount in controversy for diversity jurisdiction was lacking.

After remand, Moore amended his state-court petition and sought additional relief. Based on the amended petition, State Farm again removed the case to federal court alleging subject-matter jurisdiction based on diversity. James H. Moore, Jr. and Kenneth E. Carroll v. State Farm Fire and Casualty Company, No. 06-850 (M. D. La. removed Nov. 6, 2006) (Moore IV). By order rendered May 10, 2007, the district court remanded the cause to state court and enjoined Moore from proceeding further in the action in state court.

Louisiana, which disallow cancellation or nonrenewal of a homeonwer insurance policy that has been in effect for more than three years. See La. Rev. Stat. Ann. §§ 22:636.2(D), :635.3(C). Moore asserted that in passing Section 22:635.4, the legislature did not rescind the prohibitory statutes, but rather specifically recognized the application of the prohibitory laws to conversions of policy forms by using the language that the conversion "shall not be grounds for the cancellation or nonrenewal of any policy by the insurer." La. Rev. Stat. Ann. § 22:635.4(C). Further, Moore urged that, because the conversion results in a rate change, State Farm failed to comply with the statutory requirement that it file a rate-change request with the Commission. See La. Rev. Stat. Ann. § 22:1401.

The district court concluded that the plain language of Section 22:635.4 supports the conversion. Specifically the district court concluded that Section 22:635.4 took an approved conversion outside the scope of the prohibitory statutes. The district court found no genuine issues of material fact in dispute, granted State Farm's motions for summary judgment and denied Moore's motions. By separate orders, the district court granted State Farm's motion for an injunction regarding the remanded portions of Moore IV, thereby barring Moore from seeking relief in state court on the same issue the federal court had

decided in State Farm's favor.  See 28 U.S.C. § 2283 ("Anti-Injunction Act").  The district court also denied State Farm's request for sanctions and denied Moore's motion for new trial.  Moore appeals.

II. ANALYSIS

A. Standard of review

We review the grant of summary judgment de novo, applying the same legal standards as the district court applied to determine whether summary judgment was appropriate.  See Am. Intern. Specialty Lines Ins. Co. v. Canal Indem. Co., 352 F.3d 254, 259-60 (5th Cir. 2003).  A district court's determination of state law is also reviewed de novo.  Id. at 260.  A summary-judgment motion is properly granted only when, viewing the evidence in the light most favorable to the nonmoving party, the record indicates that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

This court also reviews de novo a district court's application of the relitigation exception of the Anti-Injunction Act. Harvey Specialty & Supply, Inc. v. Anson Flowline Equip., Inc., 434 F.3d 320, 323 (5th Cir. 2005).  The court

9

reviews the district court's decision to render an injunction for abuse of discretion.  See Newby v. Enron Corp., 302 F.3d 295, 301 (5th Cir. 2002).

In a diversity case such as this one, we apply state substantive law, here Louisiana law.  See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938).  To determine Louisiana law, we look to the final decisions of the Louisiana Supreme Court.  See In re Katrina Canal Breaches Lit., 495 F.3d 191, 206 (5th Cir. 2007); Transcon. Gas Pipe Line Corp. v. Transp. Ins. Co., 953 F.2d 985, 988 (5th Cir. 1992).  In the absence of a final decision by the Louisiana Supreme Court, we must make an Erie guess and determine, in our best judgment, how that court would resolve the issue if presented with the same case.  See Stanley v. Trinchard, 500 F.3d 411, 423 (5th Cir. 2007).[7]

When faced with unsettled questions of Louisiana law, we adhere to Louisiana's civilian decision-making process, by first examining primary sources of law:  the constitution, codes, and statutes.  Katrina Canal Breaches, 495 F.3d

---

[7]  Moore's motion requesting that we certify the questions raised in this appeal to the Louisiana Supreme Court pursuant to Rule XII of the Louisiana Supreme Court Rules is denied.  Although we acknowledge that the Louisiana Supreme Court has not issued a definitive ruling interpreting Section 22:635.4, the issues here are not so complex to warrant certification.  See, e.g., Patterson v. Mobil Oil Corp., 335 F.3d 476, 487 (5th Cir. 2003) (declining to certify case to Supreme Court of Texas because Texas law at issue was "sufficiently clear").  "Alone, the absence of a definitive answer from the state supreme court on a particular question is not sufficient to warrant certification."  Jefferson v. Lead Indus. Ass'n, Inc., 106 F.3d 1245, 1247 (5th Cir. 1997).

at 206; *Lake Charles Diesel, Inc. v. General Motors Corp.*, 328 F.3d 192, 197 (5th Cir. 2003). "[T]he primary basis of law for a civilian is legislation, and not (as in the common law) a great body of tradition in the form of prior decisions of the courts." *Transcon.*, 953 F.2d at 988 (internal quotation marks omitted). Stare decisis is foreign to Louisiana civil law. *Id.* Therefore, although this Court will not disregard Louisiana intermediate-appellate-court decisions unless we are convinced that the Louisiana Supreme Court would decide otherwise, we are not strictly bound by them. *Katrina Canal Breaches*, 495 F.3d at 206.

B. Louisiana statutory interpretation

This court is guided by principles of statutory construction set forth in the Louisiana Civil Code. "When a law is clear and unambiguous and its application does not lead to absurd consequences, the law should be applied as written and no further interpretation may be made in search of the intent of the legislature." La. Civ. Code Ann. art. 9; *Pumphrey v. City of New Orleans*, 925 So. 2d 1202, 1210 (La. 2006). When the language of the law is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law, and the words of law must be given their generally prevailing meaning. La. Civ. Code Ann. arts. 10, 11. When the words of a law are ambiguous, their meaning must be sought by examining the context in which

they occur and the text of the law as a whole, and laws on the same subject matter must be interpreted in reference to each other. La. Civ. Code Ann. arts. 12, 13.

The meaning and intent of a law is determined by considering the law in its entirety and all other laws on the same subject matter and placing a construction on the provision in question that is consistent with the express terms of the law and with the obvious intent of the legislature in enacting it. In re Succession of Boyter, 756 So. 2d 1122, 1129 (La. 2000).

> The statute must, therefore, be applied and interpreted in a manner consistent with logic and the presumed fair purpose and intention of the legislature in passing it. . . . Courts should give effect to all parts of a statute and should not give a statute an interpretation that makes any part superfluous or meaningless, if that result can be avoided.

Id. (internal citations omitted). Under general rules of statutory construction, the latest expression of the legislative will is considered controlling, and prior enactments in conflict are considered as tacitly repealed in the absence of an express repealing clause. La. Civ. Code Ann. art. 8; State v. Bd. of Comm's of Caddo Levee Dist., 175 So. 678, 681 (La. 1937).

With these guiding principles in mind, we turn to the issue of whether, under Louisiana law, State Farm's change to its homeowner policies was proper.

C. Louisiana law and analysis

The applicable Louisiana statute expressly provides:

> A. With the approval of the commissioner of insurance an insurer may convert an entire class of homeowner policies to another homeowner policy form, which has been submitted to and approved by the commissioner, as those homeowners policies are renewed. The terms and conditions of such policies, subject to conversion, shall be continued in full force and effect for the term of the policy. The conversion provided for in this Section shall not constitute the cancellation or nonrenewal of any policy and shall not be grounds for the cancellation or nonrenewal of any policy by the insurer.
>
> B. A conversion by an insurer shall be deemed approved by the commissioner unless disapproved within forty-five days of the filing of the proposed conversion with the commissioner.
>
> C. All homeowner insurance policies, which have been properly filed and converted pursuant to this Section and the conversion of which will result in a rate change, shall be subject to the laws governing rate changes under Subpart A of Part XXX of this Chapter, R.S. 22:1401, et seq.

La. Rev. Stat. Ann. § 22:635.4 (emphasis added). Moore contests the district court's interpretation of the last sentence of subsection A. Specifically, Moore contends that the term "shall not constitute" was intended by the Louisiana

Legislature to mean "is not to be" or "is prohibited from being" a cancellation or nonrenewal. Moore maintains that the district court's conclusion is inconsistent with the Louisiana Legislature's intent to prohibit cancellation or nonrenewal of a homeowner policy that has been in effect for more than three years. Moore's basis for this argument is that, with certain very limited exceptions, Louisiana law prohibits the cancellation of homeowner policies that have been in effect for such period. See La. Rev. Stat. Ann. §§ 22:635.3(C), 22:636.2(D).[8] Moore argues that, based on the district court's interpretation, an insurer may, by using the term "conversion," avoid a cancellation or nonrenewal and render the prohibitory statutes meaningless.

State Farm responds that Section 22:635.4 clearly and unambiguously provides that conversion is neither a cancellation nor a nonrenewal, and that such conversion is allowed when the insurer's form is filed with and approved or deemed approved by the Commissioner. We agree.

Having considered the plain meaning of Section 22:635.4, the arguments, and the applicable law, we hold that the district court reached a well-reasoned

---

[8] Both provisions provide, "No insurer providing property, casualty, or liability insurance shall cancel or fail to renew a homeowner's policy of insurance or to increase the policy deductible that has been in effect and renewed for more than three years" unless certain specifically listed events occur or special exceptions apply. La. Rev. Stat. Ann. §§ 22:635.3(C), 22:636.2(D).

14

interpretation of Section 22:635.4. Under the statute, a properly approved or deemed approved conversion of forms is not considered a prohibited cancellation or nonrenewal. The legislative purpose behind the enactment of Section 22:635.4 is to permit an insurer company to convert its insureds' policies without violating Louisiana's cancellation and nonrenewal laws. As the legislature creates the laws, so too can the legislature create an exception. The district court's analysis appropriately accords the full effect to Section 22:635.4 that Louisiana principles of statutory construction require.

### D. Impairment of private contracts

Moore contends that the district court's decision leads to the unconstitutional and unauthorized impairment of private contracts.[9] Moore initially raised this contention by motion for new trial, which State Farm contends comes too late and results in Moore's having waived the contention.

Assuming without deciding that Moore did not waive the argument, the record reflects that on each occasion that State Farm converted an insured's homeowner policy to the HO-W form, State Farm did so upon expiration of the existing policy. Accordingly, we hold that the HO-W conversion does not even

---

[9] "No State shall . . . pass any . . . Law impairing the Obligations of Contracts." U.S. Const. art. I, § 10, cl.1. "No . . . law impairing the obligation of contracts shall be enacted." La. Const. art. 1, § 23.

tangentially implicate a violation of the contracts clause of either the United States or Louisiana Constitution.

### E. Abstention and application of the relitigation exception of the Anti-Injunction Act

The district court concluded that the relief sought by Moore in the related proceeding remanded to Louisiana state court–a declaration regarding the legality of State Farm's conversion to the HO-W form–was identical to the issue before the federal district court. Invoking the exception to the Anti-Injunction Act, the district court enjoined the state-court proceeding. See 28 U.S.C. § 2283. Moore contends that the district court should have abstained from deciding the state-law issues in this case. See Burford v. Sun Oil Co., 319 U.S. 315, 332 (1943); R.R. Comm'n of Tex. v. Pullman, 312 U.S. 496, 499-500 (1941). Additionally, Moore challenges the district court's enjoining the remanded state-court proceeding and contends that the court improperly applied the exception to the Anti-Injunction Act.

Burford abstention applies when a case involves a complex issue of unsettled state law that is better resolved through a state's regulatory scheme. 319 U.S. at 332. To determine if Burford abstention applies, a court considers five factors:

> (1) whether the cause of action arises under federal or state law; (2) whether the case requires inquiry into unsettled issues of state law or into local facts; (3) the importance of the state interest involved; (4) the state's need for a coherent policy in that area; and (5) the presence of a special state forum for judicial review.

Wilson v. Valley Elec. Membership Corp., 8 F.3d 311, 314 (5th Cir. 1993) (internal citations omitted). Moore offers only general conclusions that this action meets each of these factors. Moore is correct that this action arises under state law and requires an inquiry into an unsettled state-law issue, as no Louisiana court has interpreted Section 22:635.4. However, Moore fails to show that Louisiana has a significant interest in this case beyond a general assertion that insurance law is important to the state, has a particular need for a coherent policy, or has a special regulatory scheme that could more adequately decide the issue. Wilson, 8 F.3d at 314. Moore has also failed to demonstrate that this action involves a complex issue of unsettled state law that would be better resolved through Louisiana's regulatory scheme.

Pullman abstention applies when an interpretation of an unclear state law will preclude the need to decide a federal constitutional issue. 312 U.S. at 499-500. Here, however, Moore fails to convince this court either that the state law

17

at issue is unclear or that the resolution of the state law will preclude the need to decide a federal constitutional issue.

The Anti-Injunction Act generally prohibits federal courts from granting injunctions that stay state-court proceedings. See 28 U.S.C. § 2283. In three instances, however, a federal court may enjoin a state-court proceeding: (1) when expressly authorized by federal statute; (2) when necessary to assert jurisdiction; and (3) when necessary to protect or effectuate a prior judgment by a federal court. Id. The relitigation exception is intended "to prevent state litigation of an issue that previously was presented to and decided by the federal court." Chick Kam Choo v. Exxon Corp., 486 U.S. 140, 147 (1988). In determining whether the relitigation exception applies, the district court employs a four-part test: (1) parties in the later action must be identical to or in privity with the parties in the previous action; (2) judgment in the prior action must have been rendered by a court of competent jurisdiction; (3) the prior action must have concluded with a final judgment on the merits; and (4) the same claim or cause of action must be involved in both suits. See New York Life Ins. Co. v. Gillispie, 203 F.3d 384, 387 (5th Cir. 2000). There are two related doctrines of preclusion: (1) claim preclusion, referred to as res judicata, and (2) issue preclusion, known as collateral estoppel. See Montana v. United States, 440 U.S.

147, 153 (1979). Although complete identity of all parties is not required, the party against whom the collateral estoppel would be applied generally must either have been a party or privy to a party in the prior litigation. See Vines v. Univ. of La. at Monroe, 398 F.3d 700, 705 (5th Cir. 2005).

As complete identity of all parties is not required, the party against whom the collateral estoppel would be applied, here Moore, is the same party as in the federal proceeding. In applying each of the provisions of the relitigation exception de novo, we hold that the district court did not err in its application.

III. CONCLUSION

We hold that the district court adhered to Louisiana's civilian decision-making process and affirm the district court's conclusion that State Farm's conversion of its homeowner policies to the HO-W form was lawful. Additionally, we hold that the HO-W conversion does not violate the contracts clause of either the United States or Louisiana Constitution. We also find no error in the district court's declining to apply the Pullman or Burford abstention doctrines. Finally, we hold that the district court's decision to enjoin the related, remanded state-court action was not an abuse of discretion.

The district court's judgment is AFFIRMED.