# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

June 17, 2010

No. 09-30422

Lyle W. Cayce
Clerk

BRIDGESTONE FIRESTONE NORTH AMERICAN TIRE, L.L.C.;
FIRESTONE POLYMERS, L.L.C.,

　　　　　　　　　　　　　　　　Plaintiffs-Appellants

v.

LIBERTY MUTUAL INSURANCE CO; INSURANCE COMPANY OF
NORTH AMERICA; PACIFIC EMPLOYERS INSURANCE CO,

　　　　　　　　　　　　　　　　Defendants-Appellees

Appeal from the United States District Court
for the Western District of Louisiana
2:08-CV-151

Before HIGGINBOTHAM, DAVIS and BENAVIDES, Circuit Judges.

PER CURIAM:[*]

In this case we consider whether injuries related to hearing loss caused by long term exposure to noise in plaintiff's plant resulted from an "accident" as defined in the defendants' respective policies. For the following reasons, we now agree with the district court that the hearing loss of the plaintiff's employees did not result from an accident and AFFIRM the judgment of the district court.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

I.

In February of 1998, a number of former employees of Bridgestone Firestone ("Firestone") filed a tort suit (hereinafter the *Blackwell* suit) against Firestone for damages related to hearing loss which allegedly arose from exposure to loud noise in the plant where they worked throughout the course of their employment. In their complaint, the *Blackwell* plaintiffs did not point to one specific event which caused their injuries, only stating that their lawsuit was filed within one year of discovering that they had experienced hearing loss.

Firestone settled the *Blackwell* plaintiffs' claims then filed suit against three of its Worker's Compensation ("WC") / Employer Liability ("EL") insurers, Liberty Mutual Insurance Company ("Liberty Mutual"), Pacific Employer Insurance Company ("Pacific"), and Insurance Company of North American ("INA") (collectively "Defendants"), claiming its insurers failed to honor their defense and indemnity obligations under their respective policies. Firestone sought a judgment declaring that the defendants owed coverage for the damages arising from the tort action brought by the *Blackwell* plaintiffs. Defendants countered that they properly denied coverage for the *Blackwell* claims because hearing loss was not an "accident" under their policies but a "disease" and that their Employer Liability policies clearly excluded coverage for "bodily injury by disease" claims not brought within thirty-six months of the end of the policy period. Liberty Mutual's policy with Firestone terminated in 1976, while Pacific and INA's policy terminated in 1982. The plaintiffs who asserted claims for which Firestone sought coverage against the defendant insurers were employed from various times between 1944 and 2005.

Firestone moved for partial summary judgment against INA and Pacific. Firestone argued that there were no material issues of fact with regard to coverage under the policies. Firestone further asserted that the question of

No. 09-30422

whether the *Blackwell* plaintiffs' claims constituted claims for "bodily injury by accident" or "bodily injury by disease" was a legal issue to be determined based on the policies themselves and the claims asserted in the *Blackwell* petition. The district court denied Firestone's motion, holding that under this court's decision in *Riverwood Int'l Corp. v. Employer's Ins. of Wasau*, 420 F.3d 378 (5th Cir. 2005), the *Blackwell* plaintiffs' hearing loss was a "bodily injury by disease" and therefore defendants' policies provided no coverage. Following this ruling, defendants filed a motion for summary judgment seeking dismissal of Firestone's claims. This time Firestone offered a different theory of coverage than it had on partial summary judgment, now arguing that extrinsic evidence was required to interpret the policies; accordingly, Firestone sought to introduce affidavits by medical experts on the effects of hearing loss. Restating the reasons given in denying Firestone's motion for partial summary judgment, the court granted summary judgment to the defendants. Firestone timely appealed.

## II.

## A.

The district court's ruling on summary judgment is reviewed *de novo*. *Am. Int'l. Specialty Lines Ins. Co. v. Canal Indem. Co.*, 352 F.3d 254, 259–60 (5th Cir. 2003). A district court's interpretation of an insurance policy is also reviewed *de novo*. *Id.* at 260. Summary judgment is properly granted only when, viewing the evidence in the light most favorable to the non-moving party, the record indicates that there is no genuine issues as to any material fact, and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## B.

On appeal, Firestone argues that the district court incorrectly interpreted the insurance policy when it found that the *Blackwell* plaintiffs' hearing loss was not an "accident" under defendants' respective policies.

3

No. 09-30422

Under Louisiana law, general principles of contract interpretation apply to the interpretation of insurance policies and an insurance policy is the law between the parties. *Succession of Fannaly v. Lafayette Ins. Co.*, 805 So.2d 1134, 1137 (La. 2002). When the words of a contract are clear, explicit, and lead to no absurd consequences, the court need not look beyond the contract language to determine the true intent of the parties. LA. CIV. CODE art. 2046. Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole. LA CIV. CODE art. 2050. In addition, words susceptible of different meanings must be interpreted as having the meaning that best conforms to the object of the contract. LA. CIV. CODE art. 2048.

The three insurance policies at issue in this case are essentially identical. The policies provide coverage under two classifications: Coverage A–Worker's Compensation, provides coverage for compensation or other benefits under worker's compensation law required to be paid by the employer and Coverage B–Employer's Liability, provides coverage for damages the employer shall become legally obligated to pay "because of bodily injury by accident or disease to an employee of the insured arising out of and in the course and scope of the employment of the insured, subject to exclusions in the policies." In a tort action for employee injury under Coverage B, the policies provide coverage to the employer for injury to its employees arising

> (1) by accident occurring during the policy period, or (2) by disease caused or aggravated by exposure of which the last day of the last exposure, in the employment of the insured, to conditions causing the disease occurs during the policy period.

Bodily injury by accident and bodily injury by disease are defined in the policies:

4

No. 09-30422

**V.    DEFINITIONS (c) Bodily Injury By Accident; Bodily Injury By Disease.** The contraction of disease is not an accident within the meaning of the word "accident" in the term "bodily injury by accident" and only such disease as results directly from a bodily injury by accident is included within the term "bodily injury by accident." The term "bodily injury by disease" includes only such disease as is not included within the term "bodily injury by accident."

Finally, the policies specifically exclude any bodily injury by disease claim not made within thirty-six months of the policy's expiration,

> This policy does not apply . . . . Under Coverage B, to bodily injury by disease unless prior to thirty-six months after the end of the policy period written claim is made or suit is brought against the Insured for damages because of such injury or death resulting therefrom.

Since the *Blackwell* suit was brought more than thirty-six months after defendants' policies terminated, the exclusion of coverage for a "bodily injury from disease" is triggered. Therefore, coverage under defendants' policies is only available to Firestone if the *Blackwell* plaintiffs' alleged hearing loss can be characterized as a "bodily injury by accident." In finding that the injury at issue in the *Blackwell* suit was not an "accident" but a "disease," the district court relied on our decision in *Riverwood Int'l Corp. v. Employers Ins. of Wasau*, 420 F.3d 378 (5th Cir. 2005).

In *Riverwood*, employer Riverwood purchased a series of excess Workers' Compensation and Employers' Liability policies from Wasau Insurance Company. The policies provided coverage from 1974 to 1984. In early 2000, a group of employees sued Riverwood, seeking damages for asbestosis and other asbestos-related diseases, allegedly caused by exposure to asbestos while working at Riverwood's paperboard manufacturing facility. Riverwood sent

notice letters to its multiple insurers, advising them of the claims. Wasau denied coverage based on an exclusion in the policy which provided that "bodily injury by disease" claims were excluded from coverage if not brought within thirty-six months after the end of the policy period.

Riverwood argued that the policy was ambiguous because it did not define the word "accident." Addressing this argument, the *Riverwood* court maintained that since the policy's purpose was to provide workers' compensation and employers' liability insurance, it should apply the definition of "accident" from Louisiana's workers' compensation statute to the policy. Under the statute, "accident" is defined as "an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration." *See* LA. REV. STAT. § 23:1021(1). This definition, the court found, suggested

> [T]hat an asbestos-related disease cannot be considered an "accident" since exposure to asbestos is normally not violent and does not, at the time of exposure, produce objective findings of an injury. Rather, an asbestos-related disease has a long latency period and normally manifests itself after continued exposure.

*Riverwood*, 420 F.3d at 383.[1]

---

[1] *Riverwood* also argued that the contract was ambiguous since the policy stated that "bodily injury by disease" could constitute a "bodily injury by accident," if it results from a "bodily injury by accident." The court rejected this claim:

According to the Policies, coverage for a "bodily injury by disease" claim is triggered if the last exposure occurred during the policy period and the claim is asserted within thirty-six months of the policy's expiration. Since an exposure is required to trigger coverage for a "bodily injury by disease" claim, a disease caused by an exposure should be considered a "bodily injury by disease." If an exposure equates to an accident, then a claim resulting from an exposure could be considered a "bodily injury by accident" claim. To interpret the Policies in this way would render the provision providing for "bodily injury by disease" claims (and the provision providing that disease claims are triggered by an exposure during the policy period) superfluous. Indeed, the Louisiana

No. 09-30422

In the case before us, both the language of the insurance policies and the nature of the underlying claims against the insured are indistinguishable from those in *Riverwood*. Guided by *Riverwood*, we apply the definition of "accident" from the Louisiana worker's compensation statute to the *Blackwell* plaintiffs' petition. In their petition, the *Blackwell* plaintiffs alleged that their hearing loss resulted from exposure to the loud noises associated with their employment:

> Plaintiff was employed by Bridgestone/Firestone . . . in Calcasieu Parish, Louisiana during the years 1946-1983. In the course of plaintiff's work at Firestone, he was occupationally exposed to unreasonably loud noise. As a result of plaintiff's work at Firestone and his unreasonable exposure to the noise, plaintiff has suffered hearing loss.

*Blackwell* Petition for Damages, ¶¶ 2–4. On appeal, Firestone argues that under the definition of "accident" applicable at the time the workers were exposed to the loud noise–but long before their injuries were manifest–the *Blackwell* plaintiffs' hearing loss as alleged in the 1997 petition would have been deemed an "accident." When Firestone entered into the insurance contracts with defendants, the worker's compensation statute defined "accident" as "an unexpected or unforeseen event happening suddenly or violently with or without human fault and producing at the time objective symptoms of an injury." LA. REV. STAT. § 23.1021(1) (1975).[2]

---

First Circuit Court of Appeal has recognized that "to find that disease that results from accidental contact with a foreign body, such as an asbestosis fiber, is bodily injury by accident would be to subsume the definition of bodily injury by accident."

*Id.* at 384 (emphasis in original) (interior citation omitted). Firestone makes this same argument on appeal, and for the same reasons we expressed in *Riverwood*, we find Firestone's argument unavailing.

[2] In 1989, the Louisiana legislature revised the definition of "accident" under the worker's compensation statute to "an unexpected or unforeseen actual, identifiable, precipitous

7

No. 09-30422

Prior to the 1989 revision of LA. REV. STAT. § 23.1021, Louisiana courts gave varied interpretations to the meaning of "accident" as it applied to worker injuries. One line of cases makes it clear that where an injury such as a heart attack or stroke occurs and the manifestation of that injury is sudden or violent, then that sudden manifestation–even if it was the culmination of a slowly developing malady–would be an "accident" under the worker's compensation statute. The Louisiana Supreme Court's decision in *Ferguson v. HDE, Inc.*, 270 So.2d 867 (La. 1972) is an example of this interpretation. In *Ferguson,* an employee received a pay check that was lower than he expected, after which he became angry and went to argue about the amount to his employer. While arguing with his employer, the employee felt a flash of pain followed by paralysis. Although an argument with his employer was not in and of itself "a violent or sudden event," the *Ferguson* court found that the employee had suffered an injury from an accident, stating, "Although he received no blow or trauma . . . . the injury was accidental because it was unexpected and unforeseen. It happened suddenly and violently. It produced at the time objective symptoms of an injury." *Id.* at 869.[3]

---

event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration." LA. REV. STAT. § 23.1021(1) (1989). Although the policies at issue in *Riverwood* were perfected (and terminated) before the definition was changed, the *Riverwood* court cited to the revised definition of "accident" in holding that the asbestos claims were not accidents. *Riverwood*, 420 F.3d at 383. Nevertheless, the court's application of the revised definition to plaintiffs' asbestosis claims makes clear that those injuries would have been "accidents" under the pre-revision definition as well: "This definition [of accident] suggests that an asbestos-related disease cannot be considered an "accident" since exposure to asbestosis normally *is not violent* and does not, *at the time of exposure, produce objective findings of an injury.* Rather, an asbestos-related disease has a long latency period and normally manifests itself after continued exposure." *Id.* (emphasis added). Similarly, in this case, we find that the hearing loss as alleged in the *Blackwell* petition would not have been an "accident" under either definition.

[3] The required "injury by accident" has thus been found to have occurred in instances of heart attack, *see, e.g., Guidry v. Sline Indus. Painters, Inc.*, 418 So.2d 626 (La. 1982);

No. 09-30422

A second line of cases suggests that when an employee is exposed to work conditions which either aggravate a pre-existing condition or cause a symptomatic degeneration in the employee's health, and a distinct event occurs where the symptoms become disabling, then this may also be characterized as an "accident." In *Parks v. Insurance Company of North America*, 340 So.2d 276 (La 1976), the employee was a seamstress who was bothered by conditions of the factory where  she worked.  After working for four months, plaintiff started to experience a sore throat, running nose, and nagging cough.  Shortly after these symptoms presented, plaintiff lost weight and contracted a fever.  Days later, she was hospitalized with chronic bronchitis and sought worker's compensation benefits from her employer.  The court found that although the seamstress could not point to one event which had precipitated those acute symptoms requiring hospitalization, she had in fact suffered an "accident."  Relying on *Ferguson v. HDE*, the court stated,

> We  have held that extraordinary physical stress and strain is not essential  to  the  definition  of  disabling  accident:  when  the performance of the usual and customary duties of a workman cause or contribute to a physical breakdown, the statutory requirements for an accidental injury are present. . . . We are satisfied therefore, that the *acute illness* suffered by plaintiff in the instant case constitutes  an  "accident"  as  that  term  is  defined  in  the compensation act and interpreted in our jurisprudence.

*Id.* at 281 (citation omitted) (emphasis added).  To find an accident under these terms, the vast majority of the Louisiana appellate courts at least require some

---

cerebral hemorrhage, *see, e.g., Griffin v. Employers' Liability Ins. Co.*, 186 So.2d 349 (La. App. 4th Cir. 1966); hernia, *see, e.g., Hill v. J.B. Beaird Corp.*, 19 So.2d 295 (La. App. 2nd Cir. 1944); abscessed lung, *see, e.g., Stiles v. International Paper Co.*, 39 So.2d 635 (La. App. 2nd Cir. 1949); spontaneous pneumothorax, *see, e.g., Dortch v. Louisiana Central Lumber Co.*, 30 So.2d 792 (La. App. 2nd Cir. 1947); ruptured intervertebral disc*, see, e.g.,  Williams v. Harris*, 77 So.2d 744 (La. App. 1st Cir. 1955). *See also* H. Alston Johnson, Louisiana Civil Law Treatise Workers' Compensation Law and Practice § 215,

9

No. 09-30422

identifiable event or incident within the policy term where the employee can demonstrate a palpable injury. We read *Riverwood* as consistent with this interpretation of the law. [4]

_____

[4] *See also, Chism v. Kaiser Aluminum and Chemical Corp.*, 332 So.2d 784 (La. 1976) (plaintiff received a series of occupational injuries for which he sought medical care; after returning to work and performing same strenuous duties, the pain became so severe that he was hospitalized with a herniated disc; characterized as "accident:") *Lum v. Employer's Mut. Lia. Ins. Co. of Wis.*, 216 So.2d 889 (La. App. 2nd Cir. 1968) (plaintiff's job required him to stuff giblets into frozen chickens; plaintiff suffered from pre-existing arthritis; court found he suffered "accident" because on one occasion while stuffing chicken plaintiff felt a sudden "popping" of wrist); *Romero v. Otis International*, 343 So.2d 405, 409 (La. App. 3rd Cir. 1977) (hearing loss when working with air hammer was an "accident" because, "a part of [plaintiff's] body, his inner ear, suddenly gave way while he was discharging his usual and customary duties"); *Hall v. Georgia-Pacific Corp.*, 390 So.2d 948 (La. App. 2nd Cir. 1980) ("accident" when plaintiff with pre-existing automobile injury worked in lumber mill and experienced a "sudden popping in his shoulder in the course of working with the plywood"); *Harper v. Kast Metals Corp.*, 397 So.2d 529 (La. App. 2nd Cir. 1981) (plaintiff with pre-existing arthritis whose employment left him with sore wrists testified that on a specific date, he twisted one of his wrists; found to be an "accident"); *Melder v. Century Telephone Enterprises, Inc.*, 413 So.2d 1325, 1328 (La. App. 3rd Cir. 1982) (worker with pre-existing back condition was aggravated by the demands of the job such that worker's ultimate injury–a herniated disc–was deemed an "accident"). In one instance, a Louisiana court suggested that the definition of "accident" did not require a final conclusory event; however, this interpretation was dependant on a worker injury caused by the aggravation of a pre-existing condition. *McCoy v. Kroger Co.*, 431 So.2d 824, 827 (La. App. 2nd Cir. 1983) ("In our view the current jurisprudential definition is such that an "accident" has occurred within the meaning of the compensation act when the conditions of employment provide continual strain or trauma, as here, or exposure, as in *Parks*, and these events cumulatively combine to aggravate a pre-existing condition so as to disable the employee.")

In its Reply Brief, Firestone cites two cases *Quine v. Ideal Cement Co.*, 351 So. 2d 1303 (La. App. 1st Cir. 1977) and *Chatelain v. American Can Co.*, 344 So.2d 1180 (La App. 4th Cir. 1977), which purportedly show that hearing loss was an injury by "accident" under the pre-1989 statute; however, we are not persuaded that these cases are instructive in determining whether the claims at issue in this case arise from "accidents."

In *Quine v. Ideal Cement Co.*, the court of appeals dismissed a worker's claim for compensation benefits. The employee in *Quine* had complained of hearing loss for four years and sought medical treatment before his hearing loss prevented him from performing his duties. Although setting forth the analysis related to the definition of "accident" under the worker's compensation statute, the first circuit focused on the plaintiff's failure to show that his hearing loss was caused by the conditions of his employment and not caused by Meniere's disease.

In *Chatelain v. American Can Co.*, plaintiff alleged that the loud noises associated with his employment forced him to request a change in position with his employer, after which he sought permanent disability. The district court found that the plaintiff did not allege an accident. The court of appeals, stated that "we agree with appellant that extraordinary

10

No. 09-30422

The *Blackwell* plaintiffs do not allege any such event. According to the petition, their hearing was affected by the prolonged exposure to loud noises associated with their employment; no sudden manifestation of hearing loss is alleged. Furthermore, the *Blackwell* petition filed in February of 1998 alleges that plaintiffs discovered their injuries at the earliest in February of 1997. *Blackwell* Petition for Damages, ¶ 12. We found no cases where Louisiana courts characterized an injury as resulting from an "accident" within the policy period when the only "event" occurring during a policy period was general exposure and the "injury" was not discovered until many years after the policy had terminated. In this case, over fourteen years elapsed from the time defendants' policies terminated and the *Blackwell* plaintiffs discovered their injury. These facts belie any possibility that an "accident occurred during the policy period."

Because it is undisputed that the *Blackwell* claims were brought long after the thirty-six month period expired for seeking recovery for "bodily injury by disease," defendants' policies clearly and unambiguously excluded coverage to Firestone for the injuries alleged in the *Blackwell* suit.[5]

---

physical stress and strain is not essential to the definition of disabling accident. . . . the real issue before us is whether the plaintiff sustained his burden of proof of causation of the hearing loss." *Id.* at 1182–83. Finding that the plaintiff failed to prove causation, the fourth circuit affirmed the district court's dismissal of plaintiff's claim.

Along with the fact that the employees' claims for compensation were dismissed by the courts of appeal, both *Quine* and *Chatelain* concerned a hearing loss injury that created a conclusive and final event: the inability of the worker to perform his duties. *See Quine*, 351 So.2d at 1304 ("On May 22, 1974, plainitff was unable to continue his work"); *Chatelain*, 344 So.2d at 1181 (requested a change of positions because of hearing loss on May 5, 1975). In this case, the *Blackwell* petition–insofar as it concerns exposure during defendants' policy periods–makes clear that the employees' alleged injuries did not lead to a sudden breakdown or force the employees to cease working; instead, the injuries were not discovered until many years after the defendants' policies were terminated.

[5] Firestone raises two additional issues on appeal: 1) that the district court erred in failing to consider extrinsic evidence to interpret the policies and 2) that the insurers breached their duty to defend Firestone from the underlying *Blackwell* claims. Both of these claims,

No. 09-30422

III.

For the foregoing reasons, the district court's judgment is AFFIRMED.

AFFIRMED

---

however, are based on Firestone's erroneous premise that defendants' policies were ambiguous.

With respect to Firestone's first claim, under Louisiana law, the meaning and intent of parties to a written instrument are determined from the instrument's four corners. *Abshire v. Vermillion Parish School Bd.*, 848 So. 2d 552, 555 (La. 2003). If the meaning of the instrument is clear, extrinsic evidence is inadmissible either to explain or to contradict the instrument's terms. *Id.* For the reasons expressed above, the language in defendants' policies is clear and unambiguous; therefore, the district court did not err when it refused to consider the extrinsic evidence proffered by Firestone.

With respect to defendants' duty to defend, under Louisiana law, an insurer's duty to defend suits brought against its insured is determined by the allegations of the plaintiffs' petition. If assuming the allegations of the petition to be true, there would be both coverage under the policy and liability to the plaintiff, the insurer must defend the insured regardless of the outcome of the suit. *American Home Assur. Co. v. Czarniecki*, 230 So.2d 253, 269 (La. 1970). In this case, the unambiguous policy language coupled with the allegations of the *Blackwell* petition make clear that the defendants had no duty to defend Firestone.