# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 5, 2011

No. 11-30049
Summary Calendar

Lyle W. Cayce
Clerk

CONTINENTAL HOLDINGS, INCORPORATED,

Plaintiff–Appellant

v.

LIBERTY MUTUAL INSURANCE COMPANY; AMERICAN MOTORISTS
INSURANCE COMPANY,

Defendants–Appellees

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 3:09-CV-595

Before WIENER, PRADO, and OWEN, Circuit Judges.

PER CURIAM:[*]

Continental Holdings, Inc. ("Continental") appeals the district court's grant of Liberty Mutual Insurance Co. and American Motorists Insurance Co. (collectively "Liberty")'s motions for summary judgment. Continental took out an insurance policy with Liberty for its employees' workplace injuries, and was sued by its employees for hearing-loss injuries after the Policy lapsed.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-30049

Continental subsequently sought defense and indemnification from Liberty, which declined on the ground that the claims were barred by a thirty-six month exclusion for "bodily injuries by disease." The district court ruled, *inter alia*, that the employees' noise-induced hearing loss was a "disease" under the Policy rather than an "accident," and therefore their claims were excluded from coverage under the Policy. On appeal, Continental argues that the district court impermissibly failed to consider extrinsic medical evidence in determining the nature of the employees' noise-induced hearing-loss injuries, and impermissibly granted summary judgment based solely on the "eight corners" of the pleadings. We affirm the district court.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Continental took out a Workers Compensation/Employers' Liability Policy (collectively known as "the Policy") from Liberty beginning October 1, 1964 and running to July 1, 1973.[1] The Policy covers two kinds of work-related injuries: bodily injury by accident, and bodily injury by disease. The Policy exclusions at issue here provide:

> APPLICATION OF POLICY. This policy applies only to injury
> (1) by accident occurring during the policy period, or
> (2) by disease caused or aggravated by exposure of which the last day of exposure, in the employment of the insured, to conditions causing the disease occurs during the policy period.

Bodily injury by accident and bodily injury by disease are defined as:

> **DEFINITIONS. (c) Bodily Injury By Accident; Bodily Injury By Disease.** The contraction of disease is not an accident within the meaning of the word "accident" in the term "bodily injury by accident" and only such disease as results directly from a bodily injury by accident is included within the term "bodily injury by

---

[1] Continental took out a materially indistinguishable policy with American Motorists Insurance Co. from 1973 to 1983. The language and terms in each policy are the same, so we treat them as one policy.

accident." The term "bodily in jury by disease" includes only such disease as is not included within the term "bodily injury by accident."

The Policy also specifically excludes coverage for bodily-injury-by-disease claims not made within thirty-six months of the Policy expiring:

> **EXCLUSIONS**
> This policy does not apply: . . .
> . . . .
> (e) . . . to bodily injury by disease unless prior to thirty-six months after the end of the policy period written claim is made or suit is brought against the insured for damages because of such injury or death resulting therefrom;

In 2009, a class of former employees sued Continental for hearing-loss injuries caused by their long-term exposure to industrial noise while working for Continental. The employees alleged that "the hearing loss [they] suffered . . . was painless, and occurred gradually over a long period of time as a result of their continuous long term exposure to hazardous industrial noise at the defendant's facility." The suit is currently pending in state court. *See Bell et al. v. Level 3 Commc'ns, LLC (Individually and as Successor-in-Interest to Continental Holdings, Inc.) et al.*, No. 31.663 (La. 2d Dist.). Continental subsequently filed the instant suit claiming that Liberty must defend and indemnify it against the *Bell* plaintiffs' claims under the Policy. Continental filed a motion for partial summary judgment, and Liberty filed a cross motion for summary judgment asserting that it does not owe Continental a duty to defend or a duty to indemnify. The district court stayed this case pending a decision from this Court on an appeal from the Western District of Louisiana on a similar issue. After we issued the opinion in *Bridgestone Firestone North American Tire, LLC v. Liberty Mutual Insurance Co.*, 381 F. App'x 467 (5th Cir. 2010) (per curiam) (unpublished), the district court lifted the stay and Continental withdrew its motion seeking partial summary judgment and filed

a supplemental memorandum opposing defendants' motions.  Relying on our decision in *Bridgestone*, the district court granted Liberty's motion for summary judgment on both the duty to defend and the duty to indemnify claims. Continental timely appealed the grant of summary judgment on the duty to indemnify issue and does not appeal the ruling on Liberty's duty to defend.

## II.  ANALYSIS

We review the district court's grant of a motion for summary judgment de novo, applying the same standard as the district court.  *Apache v. W & T Offshore, Inc.*, 626 F.3d 789, 793 (5th Cir. 2010).  Summary judgment is appropriate when, viewing the evidence in the light most favorable to the non-movant, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  We may affirm summary judgment on  any basis supported by the record, "even if it is different from that relied on by the district court."  *Holtzclaw v. DSC Commc'ns Corp.*, 255 F.3d 254, 258 (5th Cir. 2001) (citation omitted).

## A.    The District Court Should Have Considered Appellant's Extrinsic Evidence

Continental argues that the district court erred when it failed to consider extrinsic evidence that described the cause and nature of the *Bell* plaintiffs' alleged hearing-loss injuries.  Appellants cite *Martco Ltd. Partnership v. Wellons, Inc.*, in which we held that considering evidence beyond the complaint is "indispensable in assessing the duty to indemnify."  588 F.3d 864, 872 (5th Cir. 2009).    In *Martco*, Wellons Inc. ("Wellons") sought defense and indemnification from its insurer, Admiral Insurance, in a loss-of-profits suit against it by Martco Ltd. ("Martco").  *Id.* at 870.  The duty to defend and indemnify suit and the underlying liability suit were bifurcated before trial, and after the trial on the underlying liability claims was completed, the district court

No. 11-30049

held on summary judgment that Admiral owed Martco a duty to indemnify but not a duty to defend. *Id.* at 871.

*Martco* involved a situation similar to the present case. There, the issue was whether Martco's injuries were considered "property damage" under Louisiana law. *Id.* at 879. On review, we held that Admiral had a duty to defend based solely on the "eight corners" of the pleadings. *Id.* at 872–77. On review of the indemnification claim, however, we held that "we are not limited by the eight corners rule in assessing the duty to indemnify. Instead, we must apply the Policy to the actual evidence adduced at the underlying liability trial together with any evidence introduced in the coverage case." *Id.* at 877.

In this case, Continental seeks to clarify the nature of its employees' injuries through extrinsic medical evidence to determine whether those injuries fall under the definition of "injury by accident" as defined by Louisiana law during the time period of the policy coverage. Liberty attempts to distinguish *Martco* on the grounds that in that case the insurer's motion for summary judgment on indemnity was filed after a full trial on the underlying liability issues. This argument is unpersuasive. *Martco* held that a court is not limited to the eight corners rule in reviewing a duty to indemnify claim, and should take "factual inquiries beyond the complaint" into account in its determination. *Id.* at 872. This conclusion is not rendered inapplicable because a final determination on the underlying liability suit is still pending in state court.

Liberty also argues that our decision in *Bridgestone*[2] renders a *Martco* analysis unnecessary. The facts in *Bridgestone* are nearly identical to those in the present case. *See Bridgestone*, 381 F. App'x at 468–69. Former Bridgestone Firestone ("Bridgestone") employees filed suit against the employer for damages related to hearing loss from exposure to loud noises during the course of their

---

[2] *Bridgestone* is an unpublished, per curiam opinion and is therefore not precedent under 5TH CIR. R. 47.5.

employment. *Id.* at 468. After a settlement with the former employees, Bridgestone filed suit against its insurers, claiming that they failed to honor their defense and indemnity obligations. *Id.* The district court found that the thirty-six month exclusion in the policy applied because hearing loss was not characterized as an "accident" under Louisiana law, and we affirmed. *Id.* at 474. We held that the district court was correct when it did not consider extrinsic evidence to interpret clear and unambiguous policy language. *Id.* In this case, however, there is no dispute that the policy terms are unambiguous. Rather than seeking to admit extrinsic evidence to interpret the Policy terms themselves, as was the case in *Bridgestone*, Continental seeks to admit extrinsic evidence to properly understand and classify the injuries suffered by the *Bell* plaintiffs under the Policy's unambiguous terms. *Bridgestone* therefore does not control.

Our decision in *Martco* controls, and the district court should have considered Continental's extrinsic evidence in its summary judgment ruling. The district court therefore erred when it did not consider Continental's extrinsic evidence related to the physical process of industrial hearing loss. Because we find that Continental's employees' alleged injuries as described in the affidavit are not an "injury by accident" under the applicable Louisiana statute, however, the district court nevertheless properly granted summary judgment in favor of Liberty.

**B.     Gradual Hearing Loss Is Not an "Accident" Under Louisiana Law**

The parties agree and we have held that Workers Compensation/Employers' Liability policies incorporate the law and definition of Louisiana's Worker's Compensation Act ("LWCA") at the time the policies were sold. *See, e.g.*, *Bridgestone*, 391 F. App'x at 471. We therefore look to the version of the LWCA in effect at the time the Policy was sold to interpret the Policy.

No. 11-30049

When the Policy with Liberty was sold, LWCA defined "accident" as "an unexpected or unforeseen event happening suddenly or violently with or without human fault and producing at the time objective symptoms of an injury." LA. REV. STAT. ANN. § 23.1021(1) (1975).[3] Continental argues that gradual hearing loss is a "bodily injury by accident" under the then-existing statute as interpreted by Louisiana courts. Continental introduced Dr. Robert A. Dobie's affidavit, in which he explains that the symptoms accompanying noise-induced hearing loss can be measured at the moment the noise is heard, through the administration of an audiogram. Continental contends that because the workers' hearing loss could have been measured by an audiogram, the industrial noises to which they were exposed produced an objective symptom of injury and therefore fell under Louisiana's then-existing statutory definition of "accident." But the vast majority of Louisiana cases reach a contrary conclusion. *See, e.g.*, *Becker*, 2011 WL 2164151, at *16 (finding "gradual hearing loss resulting from occupational noise exposure . . . cannot meet the definition of an 'accident' under any version of the LWCA"); *Gaspard v. Petroservice, Inc.*, 266 So. 2d 453, 454 (La. App. Ct. 1972) (finding no "accident," under the pre-1989 version of the LWCA, when there is not a single, identifiable event that appears to have caused the condition).

In the underlying liability suit, Continental's employees do not claim that a single event caused their accident, nor do they claim that they experienced symptoms during the period of time that the Policy was in effect. Appellant cites

---

[3] The statute was revised in 1989. The revised version defines "accident" as "an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury *which is more than simply a gradual deterioration or progressive degeneration*." LA. REV. STAT. ANN. § 23.1021(1) (1989) (emphasis added). Continental's argument that this change in the law necessarily shows that the version of the LWCA in effect during the Policy period included gradual hearing loss as an "accident" is without merit. *See Becker v. Murphy Oil Corp.*, No. 2010-CA-1519, 2011 WL 2164151, at *14 n.44 (La. App. Ct. June 2, 2011).

four cases that, it argues, represent that occupational hearing-loss could be an accident under LWCA. Each case, however, is distinguishable. While two of the cases, *Chatelain v. American Can Co.*, 344 So. 2d 1180 (La. App. Ct. 1977) and *Quine v. Ideal Cement Co.*, 351 So. 2d 1303 (La. App. Ct. 1977), explain that physical strain is not needed for an injury to be considered an "accident" under the LWCA and that regular workplace conditions can cause or contribute to an "accident," in each of those cases the plaintiff complained of hearing loss during the period of employment—that is, there was an acute, identifiable occurrence of injury. The Louisiana Supreme Court has explained that sudden manifestations of an injury—like a heart attack or stroke—are "accidents" even if there they are the culmination of a chronic condition. *See Ferguson v. HDE, Inc.*, 270 So. 2d 867 (La. 1972). As we explained in *Bridgestone*, even under this interpretation the Louisiana courts "at least require some identifiable event or incident within the policy term where the employee can demonstrate a palpable injury." 381 F. App'x at 472.

The other two cases are also distinguishable on the ground that the employee–plaintiff experienced a sudden, acute, and identifiable injury during the period of employment. *See Romero v. Otis Int'l*, 343 So. 2d 405 (La. App. Ct. 1977) (employees experienced sudden onset of noticeable symptoms in addition to hearing loss during the course of their employment); *Whitworth v. Kaiser Aluminum & Chem. Corp.*, 135 So. 2d 584 (La. App. Ct. 1961) (employee complained of ear injury immediately after noise-exposure and requested and was denied a transfer, after which he experienced nearly total deafness over the course of a few months).

Likewise, the analysis of the LWCA in *Bridgestone* is persuasive. After a thorough examination of cases interpreting the pre-1989 version of the LWCA, we found that "the vast majority of the Louisiana appellate courts at least require some identifiable event or incident within the policy term where the

No. 11-30049

employee can demonstrate a palpable injury." 381 F. App'x at 472. We then concluded that hearing loss was not considered an "accident" under the pre-1989 version of the LWCA. *Id.* at 474. We agree with this reasoning and conclude that noise-induced hearing-loss is not an "accident" under the LWCA. Therefore, the thirty-six month exclusion applies and summary judgment is appropriate.

## C. Continental's Request for Certification

Continental requests as an alternative that we certify the question of whether hearing loss is an "accident" under the LWCA to the Louisiana Supreme Court. To determine Louisiana law, we look to the final decisions of the Louisiana Supreme Court. *Moore v. State Farm Fire & Cas. Co.*, 556 F.3d 264, 269 (5th Cir. 2009) (citing *In re Katrina Canal Breaches Lit.*, 495 F.3d 191, 206 (5th Cir. 2007)). When there is no final decision by the Louisiana Supreme Court on the issue, "we must make an *Erie* guess and determine, in our best judgment, how that court would resolve the issue if presented with the same case." *Id.* While there is no Louisiana Supreme Court authority, the decisions from the lower courts are persuasive, and on this issue they are uniform. The issue here is sufficiently clear and not "so complex [as] to warrant certification." *Id.* at 270 n.7. We decline to certify this question to the Louisiana Supreme Court.

## III. CONCLUSION

For the foregoing reasons, the decision of the district court is AFFIRMED.

9