# STATE OF LOUISIANA

# COURT OF APPEAL

# FIRST CIRCUIT

# 2022 CA 0111

## JOSEPH LOUIS ST. ROMAIN

## VERSUS

## DELTA SOUTHERN CO., INC., ET AL.

Judgment Rendered: **SEP 2 2 2022**

* * * * *

On Appeal from the
19th Judicial District Court
Parish of East Baton Rouge, State of Louisiana
Trial Court No. 679833

The Honorable Trudy M. White, Judge Presiding

* * * * *

Mickey P. Landry
Frank J. Swarr
Matthew C. Clark
New Orleans, Louisiana

Attorneys for Plaintiffs-Appellants,
Catherine Bowden St. Romain, Joseph Louis
St. Romain, Jr., Melinda Ann Marshall,
individually and on behalf of Joseph Louis
St. Romain

H. Minor Pipes, III
Rachel S. Kellogg
New Orleans, Louisiana

Attorneys for Defendant-Appellee,
Liberty Mutual Insurance Company as
Insurer of Delta Southern Co.,
Delta Southern Co., Inc., Delta Tank
Manufacturing Co. and Southern
Fabricating & Welding Co., Inc.

* * * * *

BEFORE: WHIPPLE, C.J., GUIDRY, AND WOLFE, JJ.

**WOLFE, J.**

This appeal concerns whether a claim for damages from contracting mesothelioma as a result of asbestos exposure in the early 1960s is a covered claim under an insurance policy. The trial court applied a policy exclusion barring claims filed over 36 months after the end of the last possible policy period, which ended in September 1966.[1] For the following reasons, we affirm in part and vacate in part.

## FACTS AND PROCEDURAL HISTORY

Joseph Louis St. Romain filed a petition for damages on February 20, 2019, naming several defendants, including his former employer, Delta Southern, Co., Inc. (Delta), and its insurer, Liberty Mutual Insurance Company (Liberty).[2] Mr. St. Romain sought damages alleging that in February 2019, he was diagnosed with malignant mesothelioma as a result of asbestos exposure while employed at facilities owned and operated by Delta from 1959-1965. Mr. St. Romain died from complications of mesothelioma on August 27, 2019, and his heirs were later substituted as the plaintiffs.[3]

On February 28, 2020, Liberty filed a motion for summary judgment, alleging that the plaintiffs' claims against Liberty should be dismissed because the plaintiffs could not meet their burden of proving insurance coverage under any Liberty policy due to a 36-month notice exclusion. Liberty acknowledged that it had issued a workers' compensation/employers' liability (WC/EL) policy to Delta for three consecutive years during the time that Mr. St. Romain was employed with Delta, but

---

[1] This is the second appeal regarding this matter, because we dismissed the first appeal for lack of appellate jurisdiction. See **St. Romain v. Delta Southern Co., Inc.**, 2020-1252 (La. App. 1st Cir. 6/16/21), 328 So.3d 460, 465-466. The trial court signed an amended final judgment on July 28, 2021, ruling in favor of Liberty and dismissing all of the plaintiffs' claims against Liberty. The plaintiffs' motion for new trial was also denied. This appeal followed.

[2] Other defendants were named, but they have been dismissed or are otherwise irrelevant to this appeal.

[3] The substituted plaintiffs are Mr. St. Romain's surviving spouse, Catherine Bowden St. Romain, an adult son, Joseph Louis St. Romain, Jr., and an adult daughter, Melinda Ann Marshall.

maintained that only one of those policy periods, from September 1965 to September 1966, applied since that was the last possible policy period that Mr. St. Romain worked for Delta. Liberty maintains that under the employers' coverage portion of the policy, it pays on behalf of the employer all sums that the employer becomes obligated to pay to employees due to bodily injury by accident or disease. However, Liberty argues the injury by accident must occur during the policy period or an injury by disease must be caused or aggravated by exposure during the policy period. Liberty's policy specifically states that the contraction of a disease is not an accident. Additionally, Liberty argues that the policy has a 36-month notice exclusion which excludes coverage if the employee's claim is not filed within 36 months after the end of the applicable policy period. It is undisputed that the plaintiffs' claim was filed many decades after Liberty's policy expired.

The plaintiffs filed a motion for partial summary judgment a few days after Liberty filed its motion for summary judgment. The plaintiffs sought to have the trial court determine the type of policies at issue, arguing that Liberty's policies are occurrence based and the 36-month notice exclusion was unenforceable. The plaintiffs maintain that because Mr. St. Romain was exposed to inhalation of asbestosis fibers during Liberty's policy period, he had a bodily injury by accident. The plaintiffs also argue that Liberty's policy language is ambiguous on the main issue before the court and it should be interpreted in favor of the plaintiffs.

The parties opposed each other's motions for summary judgment, with Liberty insisting that the policy should be considered as a whole, not from one provision, and the plaintiffs countering that the 36-hour notice exclusion does not apply to third parties. The trial court[4] signed an amended final judgment on July 28, 2021, that ultimately dismissed all of the plaintiffs' claims against Liberty after

---

[4] The record reflects that *Ad Hoc* Judge Max N. Tobias, Jr., heard the motions and signed this judgment, and Judge Trudy White signed the order for appeal.

3

finding that the plaintiffs had not brought the claim for damages because of injury or death resulting from a disease prior to 36 months after the end of Liberty's policy period. While the trial court noted that Liberty's policy exclusion was "poorly drafted and significantly ambiguous," it still ruled in favor of Liberty. The plaintiffs appeal, seeking reversal of the summary judgment in favor of Liberty.[5] Liberty answers the appeal, requesting reversal of the trial court's finding that Liberty's WC/EL policy is an occurrence-based policy and the finding that the policy language was ambiguous.

## SUMMARY JUDGMENT

A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine issue of material fact. **Jenkins v. Hernandez**, 2019-0874 (La. App. 1st Cir. 6/3/20), 305 So.3d 365, 370, writ denied, 2020-00835 (La. 10/20/20), 303 So.3d 315. After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. Code Civ. P. art. 966(A)(3). Appellate courts review summary judgments *de novo*, using the same criteria that govern the trial court's consideration of whether summary judgment is appropriate. **Tennie v. Farm Bureau Property Ins. Co.**, 2020-1297 (La. App. 1st Cir. 6/4/21), 327 So.3d 1020, 1024, writ denied, 2021-00949 (La. 10/19/21), 326 So.3d 231.

The burden of proof is on the party filing the motion for summary judgment. La. Code Civ. P. art. 966(D)(1). The mover can meet this burden by filing

---

[5] The plaintiffs' motion for appeal specifically appealed the trial court's November 16, 2021 judgment denying a motion for new trial. Generally, where it is clear from the appellant's brief that the appellant intended to appeal a judgment on the merits, along with a judgment denying a motion for new trial, an appellate court will consider the appeal to be an appeal of the judgment on the merits even though the notice of appeal only refers to the judgment denying the motion for new trial. **Reed v. Louisiana Horticulture Commission**, 2021-0657 (La. App. 1st Cir. 12/22/21), 341 So.3d 66, 68 n. 2, writ denied, 2022-00284 (La. 4/12/22), 336 So.3d 89. The plaintiffs' brief clearly reveals that they intended to appeal the judgment on the merits. Accordingly, this court has jurisdiction to review the merits of the July 28, 2021 amended final judgment.

4

supporting documentary evidence consisting of pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical records, written stipulations, and admissions with the motion for summary judgment. La. Code Civ. P. art. 966(A)(4). Once the mover properly establishes the material facts by its supporting documents, the mover does not have to negate all of the essential elements of the adverse party's claim, action, or defense. The moving party must only point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. La. Code Civ. P. art. 966(D)(1); **Jenkins**, 305 So.3d at 371. The burden then shifts to the non-moving party to produce factual support, through the use of proper documentary evidence attached to its opposition, which establishes the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. La. Code Civ. P. art. 966(D)(1). If the non-moving party fails to produce sufficient factual support in its opposition which proves the existence of a genuine issue of material fact, summary judgment must be granted. **Jenkins**, 305 So.3d at 371.

Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. **Georgia-Pacific Consumer Operations, LLC v. City of Baton Rouge**, 2017-1553 (La. App. 1st Cir. 7/18/18), 255 So.3d 16, 22, writ denied, 2018-1397 (La. 12/3/18), 257 So.3d 194. The interpretation of an insurance policy usually involves a legal question that can be resolved properly in the framework of a motion for summary judgment. **Tennie**, 327 So.3d at 1025. The judiciary's role in interpreting insurance contracts is to determine the common intent of the parties to the contract. **Id.** at 1026.

When determining whether a policy affords coverage for an incident, the insured bears the burden of proving the incident falls within the policy's terms; however, the insurer has the burden of proving that a loss falls within a policy

5

exclusion. **Tennie**, 327 So.3d at 1026. Additionally, an exclusionary clause in an insurance policy must be strictly construed against the insurer, and any ambiguity in the exclusion is construed in favor of the insured. Nonetheless, an insurance policy, including its exclusions, should not be interpreted in an unreasonable or strained manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion. **Id**.

## ANALYSIS

Simply put, the plaintiffs argue that a genuine issue of material fact exists as to whether Mr. St. Romain's mesothelioma claim is "bodily injury by accident" or "bodily injury by disease" and, they further maintain that the definitions in Liberty's policy are ambiguous. Liberty argues that mesothelioma is a disease caused by inhalation of asbestosis fibers and an employee's claims for "bodily injury by disease" are clearly barred by the 36-month notice exclusion provision in the policy. The pertinent sections of Liberty's WC/EL policy, upon which both parties rely, provides:

### INSURING AGREEMENTS

**Coverage A – WORKMEN'S COMPENSATION** To pay promptly when due all compensation and other benefits required of the insured by the workmen's compensation law.

**Coverage B – EMPLOYERS' LIABILITY** To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury by accident or disease, including death at any time resulting therefrom ... by any employee of the insured arising out of and in the course of his employment ... .
*****

### DEFINITIONS
*****
(c) **Bodily Injury by Accident; Bodily Injury by Disease** The contraction of disease is not an accident within the meaning of the word "accident" in the term "bodily injury by accident" and only such disease as results directly from a bodily injury by accident is included within the term "bodily injury by accident." The term "bodily injury by disease" includes only such disease as is not included within the term "bodily injury by accident."
*****

6

**APPLICATION OF POLICY** This policy applies only to injury (1) by accident occurring during the policy period, or (2) by disease caused or aggravated by exposure of which the last day of the last exposure, in the employment of the insured, to conditions causing the disease occurs during the policy period.

## EXCLUSIONS

**This policy does not apply:**

*\*\*\*\**

(e) under Coverage B, to bodily injury by disease unless prior to thirty-six months after the end of the policy period written claim is made or suit is brought against the insured for damages because of such injury or death resulting therefrom[.]

*\*\*\*\**

Under Louisiana law, an insurance policy is a contract between the parties, and it should be construed according to the general rules of contract interpretation set forth in the Civil Code. **Tennie**, 327 So.3d at 1025. Interpretation of a contract is the determination of the common intent of the parties. La. Civ. Code art. 2045. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. La. Civ. Code art. 2046. In ascertaining the common intent, words and phrases in an insurance policy are to be construed using their plain, ordinary, and generally prevailing meaning, unless the words have acquired a technical meaning. See La. Civ. Code art. 2047; **Bosse v. Access Home Ins. Co.**, 2018-0482 (La. App. 1st Cir. 12/17/18), 267 So.3d 1142, 1146. Further, an insurance contract is construed as a whole, and each provision in the contract must be interpreted in light of the other provisions. One provision of the contract should not be construed separately at the expense of disregarding other provisions. See La. Civ. Code art. 2050; **Bosse**, 267 So.3d at 1146. Absent a conflict with statutory provisions or public policy, insurers are entitled to limit their liability and to impose reasonable conditions on the obligations they contractually assume. **Bosse**, 267 So.3d at 1146.

As a general rule, a contract is ambiguous if, after applying the established rules of contract interpretation, the contract is uncertain as to the parties' intent and

7

susceptible to more than one reasonable interpretation under the circumstances. **Riverwood Intern. Corp. v. Employers Ins. of Wausau**, 420 F.3d 378, 382 (5th Cir. 2005). On *de novo* review and application of the rules of contract interpretation we conclude that the Liberty policy is subject to only one reasonable interpretation – that an asbestos-related disease such as mesothelioma is not a "bodily injury by accident" as defined by the policy. We agree with the trial court that the definitions section of Liberty's policy at issue is poorly drafted, but we do not find the definitions to be ambiguous when interpreted in light of the other relevant policy provisions and considering the meaning of words that best conform to the object of the WC/EL policy. The policy clearly states that the "contraction of a disease is not an accident within the meaning of the word 'accident' in the term 'bodily injury by accident[.]'" Under workers' compensation law, an "accident" is defined as "an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently ... and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration." La. R.S. 23:1021(1).

It is undisputed that Mr. St. Romain's diagnosis of mesothelioma occurred over 50 years after his potential last exposure to asbestos in 1966, which did not produce objective findings of an injury. It is also undisputed that asbestos-related diseases such as mesothelioma have long latency periods and normally manifest after continued exposure as opposed to a sudden and unexpected event that causes an injury. Indeed, Louisiana courts have recognized that asbestos-related claims are injury by disease. See **Hamilton v. Anco Insulation, Inc.**, 2002-0221 (La. App. 1st Cir. 2/14/03), 844 So.2d 893, 899; **Hubbs v. Anco Insulations, Inc.**, 98-2570 (La. App. 1st Cir. 12/28/99), 747 So.2d 804, 807-808, writ denied, 2000-0325 (La. 3/24/00), 758 So.2d 798 ("to find that disease that results from accidental contact with a foreign body, such as an asbestos fiber, is bodily injury by accident would be

8

to subsume the definition of bodily injury by disease into the definition of bodily injury by accident."). We find no reason to deviate from this jurisprudence interpreting the same policy language. Therefore, since Mr. St. Romain's claim involves a bodily injury by disease, the 36-hour notice exclusion applies and should be enforced as written. Coverage for bodily injury by disease claims are triggered by an injurious exposure during the policy period, and coverage will not apply unless a written claim is made or suit for damages is brought prior to 36 months after the end of the policy period. This did not happen in this case. Accordingly, Liberty's policy exclusion applies and the trial court did not err in granting Liberty summary judgment based on the 36-month notice exclusion.[6]

## ANSWER TO APPEAL

Liberty filed an answer to this appeal requesting that we reverse the portion of the trial court's judgment that granted the plaintiff's partial summary judgment in part by ruling that Liberty's WC/EL policy was an occurrence-based policy. We find that this determination is unnecessary to our ultimate holding that there is no coverage under Liberty's policy due to the 36-month notice exclusion. We will not decide abstract or advisory opinions; thus, we grant Liberty's answer to the appeal and vacate that unnecessary finding of the trial court. See **In re E.W.**, 2009-1589 (La. App. 1st Cir. 5/7/10), 38 So.3d 1033, 1037 (a court is not required to decide abstract propositions or to declare principles of law that cannot affect the result as to the thing at issue in the case before it).

---

[6] We find no merit to and no need for further discussion of the plaintiffs' argument that the exclusion cannot be applied to limit an insurer's liability to third parties. The supreme court answered this question, finding no violation of the Direct Action Statute under a similar coverage exclusion in **Gorman v. City of Opelousas**, 2013-1734 (La. 7/1/14), 148 So.3d 888, 896-897. See also **Anderson v. Ichinose**, 98-2157 (La. 9/8/99), 760 So.2d 302, 306-307 (the Direct Action Statute does not extend the protection of the liability policy to risks that were not covered or were excluded by the policy).

9

In its answer to this appeal, Liberty also requested that we vacate the trial court's finding that the policy language at issue was "significantly ambiguous." Based on long-standing jurisprudence and our finding that while the definition section of Liberty's policy was poorly drafted, it is not ambiguous. Thus, we agree with Liberty that the words "and significantly ambiguous" should be removed from the second section of the July 28, 2021 amended final judgment. See **Louisiana Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.**, 630 So.2d 759, 766 (La. 1994) (although an insurance policy may be complex and could be written in a clearer manner, that does not necessarily render the policy ambiguous).

## CONCLUSION

For the stated reasons, we affirm the amended final judgment dated July 28, 2021, granting summary judgment in favor of Liberty Mutual Insurance Company and dismissing all of the plaintiffs', Catherine Bowden St. Romain, Joseph Louis St. Romain, Jr., Melinda Ann Marshall, individually and on behalf of Joseph Louis St. Romain, claims against Liberty Mutual Insurance Company with prejudice. Additionally, we grant Liberty Mutual Insurance Company's answer to this appeal and vacate the trial court's findings stated in the judgment, that the insurance policy at issue was an occurrence-based policy with ambiguous language. All costs of this appeal are assessed to the plaintiffs, Catherine Bowden St. Romain, Joseph Louis St. Romain, Jr., and Melinda Ann Marshall.

**JULY 28, 2021 JUDGMENT AFFIRMED IN PART AND VACATED IN PART.**